STOLLENWERK and others, Respondents, vs. KLEVENOW and others, Appellants.

*November 20—December 10, 1912.*

*Injunction: On whom binding: Town supervisors: Persons having notice: Violation: Contempt of court: Punishment: Procedure: Failure to find essential facts: Harmless errors: Imposing penalty: Attorneys' fees: Ditches and drains.*

1. A town supervisor who, after service upon him of an order restraining the taking of any steps toward the construction of a drainage ditch, with another person having knowledge of the injunction, resorted to a subterfuge whereby the latter dug the ditch under arrangement with a landowner who was to pay him therefor and in return receive a rebate of the drainage tax levied against his land, were properly convicted of contempt of court for violation of the injunction.

2. Where an injunctional order was directed against certain defendants as the board of supervisors of a town, it is no defense in a proceeding for contempt that in doing the prohibited acts they were not acting as a town board but as agents of the state, exercising police power.

3. An injunctional order restraining certain defendants, as the board of supervisors of a town, and all persons acting under or by virtue of their authority, from proceeding with the construction of a drainage ditch, was binding not only on such defendants but on all persons having notice of it.

4. Acts alleged to be a violation of an injunctional order are not punishable under secs. 3477, 3489, 3490, Stats. (1898), unless they were calculated to or actually did defeat, impede, or prejudice the rights or remedies of a party to an action; and the court should so determine and adjudge before imposing any

fine, and should also determine and adjudge whether or not actual loss resulted to any party, so that proper disposition may be made of the fine imposed.

5. Failure of the trial court to find these essential facts in express terms is not prejudicial error since the enactment of sec. 3072m, Stats. (Laws of 1909, ch. 192), if the record affirmatively shows that the misconduct found was in fact calculated to impede or prejudice the rights of a party and that such party suffered loss in consequence thereof.

6. Where an action was commenced by the owners of lands at the lower end of a proposed drainage ditch, primarily to prevent the collection of a tax for benefits where damage rather than benefits would result, and to prevent the flooding of their lands, the construction of a small part only of the ditch above them, in violation of an injunctional order, was calculated to defeat, impede, and prejudice their rights, even though actual damage was not thereby done to their lands; and such facts appearing in the record sustain the imposition of a penalty upon the guilty persons.

7. In such case it was the duty of the plaintiffs to bring to the attention of the court the fact that its order was being set at defiance, and to employ attorneys for that purpose and, where defendants contested the proceeding and sought a writ of prohibition from the supreme court, to instruct their attorneys to resist that application; and it was proper to impose upon the guilty parties the payment of attorneys' fees so incurred.

8. The fact that in such case the money was ordered paid to the attorneys instead of to the parties, was at most an irregularity without prejudice, and does not call for a reversal.

9. *Emerson v. Huss*, 127 Wis. 215, distinguished.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed as to two defendants; affirmed as to the others.*

The complaint shows that the plaintiffs are owners of farm lands in the town of Lake, Milwaukee county, through which a drainage ditch has run for a number of years; that the defendants *Klevenow, Gomber,* and *Clemens* are the members of and constitute the board of supervisors of the town of Lake; that certain proceedings were instituted pursuant to sec. 1359, Stats. (1898), for the purpose of laying out, widening, enlarging, and straightening said ditch, and that the pro-

ceedings were carried on to a point where the taxes for the construction of the ditch were assessed and collected; that by reason of certain defects in the proceedings the whole proceedings were invalidated, and plaintiffs prayed for a permanent injunction restraining the construction of the ditch and for costs. The defendants answered by a general denial to practically all the allegations of the complaint. On June 14, 1911, an injunctional order was issued restraining the defendant board of supervisors, their agents, servants, and employees, and all persons acting under and by virtue of the authority of said defendants, from taking any steps in connection with the construction of the ditch. On July 22, 1911, an order was obtained by the plaintiffs directing the defendants and one *Peter Dinnauer,* an alleged employee of the defendants, to show cause why they should not be punished for contempt for violating the said injunctional order. A hearing was had thereon, and at the close of the testimony the court ordered that judgment be entered adjudging the defendants *Klevenow, Gomber,* and *Clemens,* and *Dinnauer,* guilty of contempt. From an order and judgment adjudging said parties guilty of contempt and requiring them to pay to the attorneys of the plaintiffs the sum of $167.49 to purge themselves of such contempt, this appeal is taken.

For the appellants *Klevenow, Gomber,* and *Clemens* there was a brief by *Otjen & Otjen,* and oral argument by *Henry Otjen.*

*Charles E. Hammersley,* for the appellant *Dinnauer.*

For the respondents there was a brief by *Geo. J. Graebner* and *E. W. Van Dyke,* and oral argument by *Mr. Van Dyke.*

Barnes, J. The material questions on this appeal are: (1) Did any of the defendants violate the injunctional order, and, if so, which of them? (2) Was the proper judgment entered and the proper penalty inflicted?

On his own testimony *Dinnauer* was clearly guilty of vio-

lating the injunctional order. He testified in substance that *Klevenow* told him that he might arrange with one of the landowners (Wagen) to dig the ditch, and that when Wagen O.K.'d the work the town board would refund to him the amount of the special tax assessed against his land for ditch construction and Wagen could then pay it over to the witness (*Dinnauer*), and that the work was done pursuant to this arrangement, part of it having been done after the injunctional order was served on *Dinnauer*. This testimony showed that *Klevenow* and *Dinnauer* were resorting to a subterfuge to render the injunction nugatory. The evidence of *Dinnauer* and Wagen amply warranted the court in finding that supervisor *Klevenow* was likewise guilty.

The court found as a fact that *Klevenow,* in authorizing *Dinnauer* to dig the ditch, acted for and in behalf of himself and the defendants *Gomber* and *Clemens,* who with *Klevenow* made up the board of supervisors. The case against *Gomber* and *Clemens* depends on this finding. We have been unable to find any evidence in the record to sustain it. These defendants denied under oath that *Klevenow* acted for them or pursuant to any understanding with them or that they had any knowledge of the employment of *Dinnauer*. There is one *ex parte* affidavit in the record which might be said to raise a suspicion that *Clemens* might be guilty. It relates to a different transaction from the one on which the contempt proceedings were predicated, and if relevant at all we deem it insufficient to establish the charge of which *Clemens* was found guilty. Without further discussion of the evidence, we conclude that it was sufficient to sustain a judgment against *Dinnauer* and *Klevenow* and insufficient to sustain one against *Gomber* and *Clemens*.

The contention that, the injunction being directed against the defendants as supervisors of the town, it did not affect them, because, in doing what they were charged with, they were not acting as a town board but as agents of the state ex-

ercising police power, does not merit serious consideration. When the three gentlemen who comprised the town board were served with the injunctional order there was just one thing for them to do while it remained in force, and that was to obey it rather than experiment with it. 2 High, Injunctions (4th ed.) § 1427. The order was not only binding on the defendants but on all persons having notice of it. *Poertner v. Russel,* 33 Wis. 193; 22 Cyc. 1011, and cases cited in note 94; Id. 1012, and cases cited in notes 2 and 3.

It is argued that the findings of fact and conclusions of law do not authorize the penalty imposed on appellants.

Sec. 3477, Stats. (1898), provides that "Every court of record . . . shall have power to punish by fine and imprisonment, or either, any . . . misconduct by which the rights or remedies of a party in an action . . . may be defeated, impaired, impeded or prejudiced" in certain enumerated cases which cover the violation of an injunctional order.

Sec. 3489, Stats. (1898), provides that "If, upon the hearing . . . the court shall adjudge the defendant to have been guilty of the misconduct alleged and that the misconduct was calculated to or actually did defeat, impede or prejudice the rights or remedies of any party in an action or proceeding pending in such court, it shall proceed to impose a fine or to imprison him, or both, as the nature of the case shall require."

Sec. 3490 provides that "If an actual loss or injury has been produced to any party by the misconduct alleged the court shall order a sufficient sum to be paid by the defendant to such party to indemnify him and to satisfy his costs and expenses, instead of imposing a fine upon such defendant. . . . Where no such actual loss or injury has been produced the fine shall not exceed two hundred and fifty dollars over and above the costs and expenses of the proceedings."

This court considered these statutes in *Emerson v. Huss,* 127 Wis. 215, 106 N. W. 518, and construed them so far as it was necessary to do so in deciding the case. Three points

were very definitely passed upon: (1) that the misconduct complained of was not punishable unless it was calculated to or actually did defeat, impede, or prejudice the rights or remedies of some party; (2) that it was necessary for the court to determine and adjudge that the misconduct complained of was calculated to or did defeat, impede, or prejudice the rights or remedies of a party, before any fine was imposed; and (3) that it was necessary to adjudge and determine whether or not the misconduct complained of resulted in actual loss to any party, so that the court might make the proper disposition of the fine imposed.

The adjudication of the court in this case does not comply with the requirements of the *Emerson Case.* The papers were probably drawn without consulting the case referred to and without paying very close attention to the statutes cited. The court found as a fact, and as a conclusion of law as well, that the injunctional order was violated by defendants and their servant *Dinnauer,* and as a conclusion of law found that they were guilty of contempt, and ordered them to appear before the court to show cause why they should not be punished.

When the parties appeared before the trial court considerable evidence was taken as to the damages which the plaintiffs suffered by reason of the acts complained of, which damages consisted in part of attorneys' fees incurred in bringing the parties found guilty before the court for punishment and in resisting the issuance of a writ of prohibition from this court which the defendants had applied for, and which damages consisted also in part of alleged injury to the lands of some of the plaintiffs.

The final order and judgment recited that the parties found guilty had failed to show cause why the court should not proceed to the determination of the question of damages resulting to the plaintiffs from the violation of the injunctional order, and the judgment directed the parties found guilty to pay the attorneys for the plaintiffs $167.49. It will be noted that

the court does not say in so many words in the judgment that the violation complained of was calculated to or did defeat, impede, or prejudice the rights of the plaintiffs, and neither does it say in express words that the damages assessed were actually incurred. In these respects it fails to follow the *Emerson Case.*

Since that case was decided the legislature has passed sec. 3072*m,* Stats. (Laws of 1909, ch. 192), which provides that "No judgment shall be reversed . . . in any action or proceeding, civil or criminal, . . . for error as to any matter of . . . procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse . . . the judgment."

This court has endeavored to give full force and effect to this legislative declaration, and when former precedents have stood in the way of its doing so it has not hesitated to decline to follow them. For a typical example reference is made to *Hack v. State,* 141 Wis. 346, 124 N. W. 492. A legitimate distinction can be drawn between the two cases, but it is altogether probable that, had the facts in the *Emerson Case* been identical with those in this case, it would have been decided just as it was. The trial court, we must assume, had the statute before it when it imposed the penalty and was satisfied that the acts complained of were calculated to defeat, impede, or prejudice the rights of the plaintiffs. Otherwise the penalty would not have been imposed, because the statute is clear and explicit upon the point and could hardly be misinterpreted or misconstrued. The court did not realize that the judgment should recite the fact, or, if it did, was careless in signing a judgment from which the recital was omitted.

If as a matter of fact the record affirmatively shows that the misconduct found was calculated to impede or prejudice the rights of the plaintiffs and that they suffered loss in con-

sequence thereof, then no harm or prejudice has resulted to the appellants because of the blunders complained of, and the errors were not prejudicial.

The plaintiffs set forth in their complaint, among other things, that the town board proceeded arbitrarily in the assessment of benefits; that plaintiffs were required to pay in the aggregate nearly $1,300 for benefits, when as a matter of fact the proposed ditch was not a benefit but a positive damage to them; that their property was located near the lower end of the proposed ditch, and the widening and deepening of such ditch would result in carrying the waters from the higher lands through which the upper end of the ditch was constructed down to the lands of the plaintiffs much more rapidly than if the ditch was not widened and deepened; that the connection with the lower end of the ditch would not admit of a rapid discharge of the water therefrom, and that in effect the water would become dammed up at its lower extremity and flood and submerge the lands of the plaintiffs. Primarily the action was commenced to prevent the collection of a tax for benefits where damages and no benefits resulted and to prevent the flooding of plaintiffs' lands.

If each of the upper owners undertook to dig the proposed ditch through his own land and there was then refunded to him the amount of the tax assessed against his property, it is obvious that one of the essential and vital things would be accomplished which the plaintiffs sought to prevent, to wit, a more rapid discharge of an augmented supply of water opposite to and on their lands. The plaintiffs were not obliged to wait until all of the work had been done and the consequential damage had resulted. They had the right under their injunctional order, so long as it remained in force, to have the *status quo* preserved *pendente lite*. The digging of a piece of ditch through Wagen's land might not cause actual damage to the plaintiffs so long as conditions remained unchanged on either side of this parcel of land. But the trial court found

evidence of a purpose to enlarge and deepen the upper por-
tion of the ditch, and on the showing made such enlargement
would be well calculated to result in loss and damage to the
plaintiffs or some of them.

Evidence was given tending to show that the enlargement
of the ditch on Wagen's land caused some of the lower lands
to be flooded, whereby at least one of the plaintiffs suffered
actual loss.  The court did not deem the claim to be suffi-
ciently established to warrant it in finding that actual dam-
age to the party's real estate resulted from what was done.
There can be no doubt, however, that the misconduct com-
plained of was calculated to defeat, impede, and prejudice
the rights of the plaintiffs.  The point had not yet been
reached where actual damage had been done to the plaintiffs'
lands, but a continuation of the work would, on the plaintiffs'
theory, result in serious loss to them.  They had the right
to have the questions which they raised tried and determined,
and so long as the injunction remained in force they had, as
before stated, the right to preserve the *status quo*.  They had
the right to have their lands remain in the condition in which
they were and the right to avoid going into court to collect
damages for flooding them.  Plainly the action complained of
was calculated to prejudice or impede those rights.  It is
quite obvious that the court so found, because, unless it did,
it would have no authority to impose the penalty which it did,
and because the record not only warranted such a conclusion
but would not warrant any other.  The facts being as stated,
we hold that the defendants were not prejudiced by the fail-
ure of the court to recite in the judgment that the misconduct
found was calculated to or did defeat, impede, or prejudice
the rights of the plaintiffs, that fact being shown to exist by
the record.

The last question which calls for discussion is whether the
court was warranted in imposing a penalty for the benefit of
the plaintiffs, it having found that the violation of the injunc-

tion did not result in actual damage to the land of the plaintiffs or in other pecuniary loss, except such as resulted from the employment of attorneys.

It was manifestly the duty of the plaintiffs in this case to bring to the attention of the court the fact that its order was being set at defiance and to employ attorneys for that purpose. When the defendants undertook to prohibit the trial court from taking action in the matter, it was proper for the plaintiffs to instruct their attorneys to resist that proceeding also. The employment of attorneys meant assuming an obligation that they be paid for their services. Such employment resulted in loss and damage to the plaintiffs to the extent of the amount they were legally obliged to pay for such services. Such loss was occasioned solely by the contumacious conduct of certain of the defendants. Actual loss and damage was produced and resulted to the plaintiffs by reason of the misconduct of which they complained, within the meaning of sec. 3490, Stats. (1898), and therefore the court was right in awarding indemnity to the plaintiffs. The fact that the money was ordered paid to the attorneys instead of to the parties who employed them is at best an inconsequential irregularity. The allowance was for attorneys' fees that evidently had not been paid, and it made no practical difference whether the payment was made to the attorneys or to the parties. In either case plaintiffs were indemnified.

It has been heretofore said that the facts in this case are not entirely identical with those in *Emerson v. Huss,* 127 Wis. 215, 106 N. W. 518. In the latter case no proof of any kind was preserved in the record to show that the violation of the order complained of was calculated to or did defeat, impede, or prejudice the rights of a party, and neither was any evidence offered as to what would be the reasonable value of the attorneys' fees in the contempt proceeding. Both of these elements are supplied in the case before us.

Some other questions are discussed by counsel, but we do not consider them of sufficient moment to warrant discussion.

*By the Court.*—The judgment is reversed as to the defendants *Christ Gomber* and *Wenzel Clemens,* and the cause is remanded with directions to set aside the judgment of conviction and dismiss the proceedings as to such defendants. As to the other defendants the judgment is affirmed.