TOWN OF SEYMOUR, a Wisconsin Township and Body Corporate, Plaintiff-Respondent and Cross-Appellant,

v.

CITY OF EAU CLAIRE, a Wisconsin Municipality, Defendant-Appellant and Cross-Respondent.†

Court of Appeals

*No. 82–482. Submitted on briefs October 25, 1982.—*
*Decided March 8, 1983.*
(Also reported in 332 N.W.2d 821.)

† Petition to review denied.

314

316

For the appellant and cross-respondent the cause was submitted on the briefs of *Frederick W. Fischer*, city attorney of Eau Claire.

For the respondent and cross-appellant the cause was submitted on the briefs of *W.G. Holgate & Associates* and *Michael H. Forecki* of Eau Claire.

Before Foley, P.J., Dean and Cane, JJ.

DEAN, J. The City of Eau Claire appeals from a judgment finding it in contempt under sec. 785.01(1)(b), Stats., and awarding the Town of Seymour attorney's fees, costs and disbursements. The city alleges that the trial court erred in finding it in contempt and in its award to the town. The town cross-appeals, contending that the trial court erred in granting the city prospective relief from a 1979 judgment, in granting relief from an administrative decision of the Department of Natural Resources, and in refusing to grant legal fees and costs on its interlocutory appeal as damages for the city's con-

tempt. Because the trial court's findings upon which it based its contempt are not against the great weight and clear preponderance of the evidence and because the trial court did not err in its award to the town, in granting the city prospective relief, and in refusing to grant the town legal fees and costs, we affirm.

In August, 1978, the town sued the DNR and the city in an attempt to prevent or restrict the city's development of a landfill site within the town. The town and the city settled the action by stipulation. The town and the city stipulated that the city would construct a transfer station to be operational by October 1, 1979. The trial court incorporated the stipulation into its judgment of January 10, 1979.

In September, 1980, the city and Eau Claire County began negotiations for the county's purchase of the landfill site. As of this date, the city still had not constructed the transfer station. The town attempted unsuccessfully to enjoin the sale because the transfer station would not be constructed under the terms of the sales agreement. In December, 1980, the city declared that it no longer intended to construct the transfer station pursuant to the 1979 judgment, should the sale be completed. The sale was subsequently completed without provision for the construction of the transfer station. The town pursued a contempt action against the city.

The city contends that it should not have been found in contempt because of the substantial change in circumstances that resulted after the 1979 judgment. It asserts that its sale of the landfill site to the county negated the usefulness of the transfer station because it no longer had the power to require the users of the landfill site to utilize the transfer station. The city also argues that there is no longer a need for the transfer station because the traffic and litter problems that the transfer station was to alleviate have not occurred. The trial court

found the city in contempt because it failed to provide for the construction of the transfer station in its landfill site sales agreement with the county, and because of its December, 1980, announcement. The trial court also found that the city was not compelled to enter into a sales agreement with the county until the city was satisfied that it could honor the 1979 judgment and that the city was still able to comply with its order to construct the transfer station.

For a finding of civil contempt, it is essential that the thing ordered to be done be within the power of the person. *See Schroeder v. Schroeder,* 100 Wis. 2d 625, 638, 302 N.W.2d 475, 482 (1981). A person cannot be punished for contempt for failing to comply with an impossible order. *See State v. Balistrieri,* 55 Wis. 2d 513, 523, 201 N.W.2d 18, 24 (1972). Whether the thing ordered is within the capability of the person to do is a question of fact for the trial court to be decided upon the evidence presented. *See In re Adam's Rib, Inc.,* 39 Wis. 2d 741, 746, 159 N.W.2d 643, 646 (1968). The findings of fact in a civil contempt proceeding are conclusive unless contrary to the great weight and clear preponderance of the evidence. *Balistrieri,* 55 Wis. 2d at 524, 201 N.W.2d at 24.

The trial court's findings of fact upon which it based its contempt finding are not against the great weight and clear preponderance of the evidence. The 1979 judgment required the city to construct a transfer station. The city announced its intention not to comply with the portion of the judgment requiring it to construct the transfer station. Furthermore, the record indicates that the city's sales agreement with the county did not provide for the construction of the transfer station and does not reveal any special exigency that com-

pelled the city to sell the landfill site to the county without providing for a transfer station in the sales agreement. While the 1979 judgment envisioned a county-wide waste system, it did not specify a date when such a system had to be in effect. Additionally, the record indicates that the city's construction of the transfer station was still possible. A consultant on transfer systems testified that the city could build the transfer station for $300,000 to $400,000.

The city contends that sec. 785.04, Stats., did not authorize the trial court to award the town its attorney's fees, costs, and disbursements as damages. The trial court concluded that sec. 785.04 did not restrict its power to award attorney's fees in a contempt case.

The interpretation of a statute is a question of law, and we review the question without deference to the trial court's reasoning. In construing a statute, first resort is to the language of the statute itself. *Central National Bank of Wausau v. Dustin,* 107 Wis. 2d 614, 617, 321 N.W.2d 321, 322 (Ct. App. 1982). In the absence of ambiguity in a statute, resort to judicial rules of interpretation and construction is not permitted, and the words of the statute must be given their obvious and ordinary meaning. A statute, phrase, or word is ambiguous when capable of being interpreted by reasonably well-informed persons in either of two or more senses. When a statute or part thereof is ambiguous, it is permissible to look to the legislative intent, which is to be found in the language of the statute, in relation to the statute's context, scope, history, subject matter, and the object intended to be accomplished. *Wisconsin Bankers Association v. Mutual Savings & Loan Association,* 96 Wis. 2d 438, 450, 291 N.W.2d 869, 875 (1980).

Section 785.04 (1) (a) [1] is ambiguous because it is fairly susceptible to more than one meaning. *Id.* This section could mean that attorney's fees, costs and disbursements are not authorized because, as the city points out, the phrase "costs and expenses" was eliminated from the section when the statute was amended in 1979. Chapter 257, sec. 11, Laws of 1979. This section could also mean that attorney's fees are authorized because, as the town points out, Wisconsin has previously held that attorney's fees are recoverable as damages for contempt. *See Stollenwerk v. Klevenow,* 151 Wis. 355, 364, 139 N.W. 203, 206 (1912).

We conclude that sec. 785.04 (1) (a) authorizes the trial court to award attorney's fees and other litigation costs. The history of sec. 785.04 indicates that the legislature did not intend to eliminate the court's power to impose such a sanction upon a contemptuous party when it amended the statute in 1979. The committee comment on sec. 785.04 notes: "The sanctions listed in this section are essentially the same as under prior law." Under prior law, our supreme court has considered the attorney's fees that a person incurs while prosecuting a contempt action as losses and damages within the meaning of the contempt statute. *See id.*

The city contends that the trial court erroneously awarded excessive attorney's fees. A trial court's conclusion with respect to attorney's fees is subject to this

---

[1] Section 785.04 (1) (a), Stats., provides:

(1) Remedial sanction. A court may impose one or more of the following remedial sanctions:

(a) Payment of a sum of money sufficient to compensate a party for a loss or injury suffered by the party as the result of a contempt of court.

court's determination of what is reasonable because this court has firsthand knowledge of the value of legal services. This court independently reviews attorney's fees whenever they are challenged on appeal. *Estate of Tierney,* 70 Wis. 2d 438, 443, 234 N.W.2d 357, 359 (1975). Factors to be considered in awarding attorney's fees are the amount and character of the services, the labor time and trouble involved, the character or importance of the litigation, the professional skill necessary, and the attorney's standing in the profession. *Patrick v. Head of the Lakes Cooperative Electric Association,* 98 Wis. 2d 66, 72, 295 N.W.2d 205, 208–09 (Ct. App. 1980).

The trial court's award was not excessive. A total of 454.5 hours of attorney time was spent at $55 per hour. The $55 rate is within the average amount charged by reasonably experienced attorneys in the Eau Claire area. The amount of time spent on this case was not excessive. The action was unusual because it involved a conflict between two municipalities over a landfill site. Environmental law is a specialized field of law. Furthermore, it was necessary for the town to replace its attorney because of the original attorney's death. Additionally, the amount of time claimed by the town relates to the attorney time spent by the town beginning in November of 1979 to the conclusion of the contempt proceeding in trying to secure enforcement of the 1979 judgment.

The town contends that the trial court erred in granting the city prospective relief from the 1979 judgment because it granted the relief on a ground not specified in sec. 806.07, Stats.[2] The trial court granted relief based

---

[2] Section 806.07, Stats., provides in part:

(1) On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

on a showing that the costs to the city would exceed the benefits to the town if it enforced the judgment. We conclude that sec. 806.07 (1) (g), which provides that the court may relieve a party from a judgment if it is no longer equitable that the judgment should have prospective relief, is applicable.

The town contends that sec. 806.07 (1) (g) requires a showing of a drastic change in circumstances that is both unforeseen and uncontrollable. Section 806.07 (1) (g), on its face, only requires that a judgment no longer be equitable. The town also contends that the trial court erred in the factors it considered and failed to consider in applying the balancing test. A trial court, however, has wide discretion in ruling on a motion to vacate a judgment. *Hollingsworth v. American Finance Corp.*, 86 Wis. 2d 172, 184, 271 N.W.2d 872, 878 (1978). This court is required to uphold a discretionary decision of the trial court if, from the record, it can be concluded *ab initio* that there are facts of record that would support the trial court's decision had discretion been exercised on the basis of those facts. *Conrad v. Conrad*, 92 Wis. 2d 407, 415, 284 N.W.2d 674, 678 (1979).

There are facts contained in the record to support the trial court's order. The trial court based its order on

(a) Mistake, inadvertence, surprise, or excusable neglect;

(b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15 (3) ;

(c) Fraud, misrepresentation, or other misconduct of an adverse party;

(d) The judgment is void;

(e) The judgment has been satisfied, released or discharged;

(f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;

(g) It is no longer equitable that the judgment should have prospective application; or

(h) Any other reasons justifying relief from the operation of the judgment.

these facts.  As previously indicated, the record indicates that it would cost the city $300,000 to $400,000 to build the transfer station today.  The record also indicates that the traffic and litter problems that the transfer station was to alleviate have not occurred.  The city's report on the traffic figures indicates that the traffic volume  near the landfill site has only increased by eleven percent. The evidence also indicates that litter is not a problem of major proportion.  The administrative coordinator for the city's public works department testified that he did not receive a large volume of complaints concerning litter.  The town's chairman testified that the town had not incurred extra costs because of litter.  Furthermore, the record indicates that the county is actively pursuing a refuse to energy facility[3] that would eliminate the usefulness of a transfer station.  A member of the county board testified to these facts.  He also testified that such a facility could become operational in two to three years.

The town contends that the trial court had no power to grant relief from an order of the DNR concerning the landfill.  The town misperceives the situation.  The trial court granted relief from its 1979 judgment.  The town contends that the trial court erred by refusing to grant the town's legal fees and costs for its interlocutory appeal.  We disagree.  Costs are usually allowable when a party prevails on appeal.  Section 809.25, Stats.  The town did not prevail on its appeal.

*By the Court.*—Judgment affirmed.

[3] This type of system converts refuse into steam through a burning process.