State of Wisconsin, DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Plaintiff-Appellant,

v.

COATINGS, INC., and Milrod, Ltd., Defendants-Respondents.†

Court of Appeals

*No. 84–1493. Submitted on briefs February 1, 1985.—
Decided March 1, 1985.*
(Also reported in 367 N.W.2d 812.)

† Petition to review granted.

For the plaintiff-appellant the cause was submitted on the briefs of *Louis Edward Elder,* principal assistant corporation counsel, of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Davis & Kuelthau, S.C.,* with *James E. Braza* and *John G. Vergeront* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

MOSER, J.  The Department of Industry, Labor and Human Relations (DILHR) appeals from the dismissal of its wage claim against Coatings, Inc. (Coatings) and Milrod, Ltd. (Milrod). The trial court held that DILHR had no authority under sec. 109.09, Stats., to recover wages allegedly owed to David Beaudet (Beaudet), a former employee of Coatings and Milrod. We affirm the trial court's grant of summary judgment in favor of Coatings and Milrod.

Coatings hired Beaudet to serve as the manager of its Milrod division. The Milrod division[1] was created by Coatings in 1981 to manufacture and distribute oil sucker rods. On April 20, 1982, after extensive negotiations, Coatings and Beaudet entered into a fourteen-page employment agreement. The agreement provided that Beaudet would manage Milrod from February 15, 1982, through December 31, 1985, and would be paid a starting salary of $3,750 per month with raises based on Milrod's overall sales performance. The employment contract provided that Milrod could terminate Beaudet's employment if certain net profits were not realized by Milrod. Beaudet's employment also could be terminated by Milrod upon any of the following conditions: (1) his death or disability; (2) his commission of an act of dishonesty involving Milrod; (3) his negligent or incompetent performance of duties; or (4) his breach of any terms in the agreement. If terminated under any of the above provisions, Beaudet was not entitled to any further compensation. Additionally, the employment

---

[1] Coatings' Milrod division later became Milrod, Ltd. and Coatings assigned Beaudet's contract to Milrod, Ltd. In the opinion we refer to the employer simply as Milrod because the legal effect of the assignment of Beaudet's contract is not at issue in this appeal.

agreement provided that Milrod could fire Beaudet at any time "without cause" upon thirty days notice to Beaudet. If Beaudet were fired "without cause" he was entitled to compensation for the months remaining on his contract.

Milrod terminated Beaudet's employment on February 18, 1983. Milrod maintained that Beaudet negligently and incompetently performed his duties and committed acts of dishonesty involving Milrod. Milrod refused to pay Beaudet any additional compensation because it maintained he had been fired for cause. Beaudet contended he was discharged without cause and that, therefore, he should be paid through December 31, 1985.

Beaudet filed a claim with DILHR requesting that DILHR collect the balance due on his employment contract. DILHR obtain an assignment of wages from Beaudet and filed a complaint on his behalf seeking $127,500. This amount represented Beaudet's $3,750 per month salary times the thirty-four months remaining on his employment contract.

The trial court held that under sec. 109.09, Stats., DILHR's authority is limited to claims for "wages." The trial court also held that wages, as defined in sec. 109.01(3), Stats., meant only that remuneration payable to an employee for past personal services. Because Beaudet had not performed any services during the period for which he sought compensation, the trial court granted summary judgment to Coatings and Milrod. DILHR appeals.

The trial court's interpretation of the pertinent provisions of ch. 109, Stats., involves a question of law and this court reviews questions of law without deference to the trial court's reasoning.[2] In construing a statute, the

---

[2] *Town of Seymour v. City of Eau Claire*, 112 Wis. 2d 313, 319, 332 N.W.2d 821, 823 (Ct. App. 1983).

first resort is to the language of the statute itself.[3] Section 109.09(1), Stats., provides in part as follows:

The department shall investigate and attempt equitably to adjust controversies between employers and employes as to alleged wage claims. The department shall enforce this chapter and ss. 66.293, 103.02, 103.49, 103.82 and 104.12. In pursuance of this duty, it may take an assignment in trust for the assigning employe of any wage claim it deems to be valid or any wage deficiency, such assignment to run to the department. The department may sue the employer on any wage claim or wage deficiency so assigned . . . .

"Wages" are defined in sec. 109.01(3), Stats., which reads:

"Wage" or "wages" mean remuneration payable to an employe for personal services, including salaries, commissions, holiday and vacation pay, overtime pay, severance pay or dismissal pay, supplemental unemployment compensation benefits when required under a binding collective bargaining agreement, bonuses and any other similar advantages agreed upon between the employer and the employe or provided by the employer to the employes as an established policy.

We conclude that the above sections are clear and unambiguous. Section 109.01(3) states that " 'wages' mean remuneration payable to an employe *for personal services* . . . ." (Emphasis added). The section then lists several examples of what constitutes remuneration for personal services. It is readily apparent that personal services must actually be performed or rendered by the employee in order for wages to be payable. Once the work is performed, then wages become due, and if an employer refuses to pay the amount earned, sec. 109.09, Stats., may be invoked by DILHR. DILHR's interpretation of sec. 109.01(3) was overly broad and encompassed a whole range of breach-of-contract claims that are far outside

---

[3] *Id.*

the scope of ch. 109. The record indicates that Beaudet was paid for all the time he worked at Milrod. Thus, he is not owed any "wages" within the meaning of sec. 109.01(3).

What Beaudet really seeks are liquidated damages based on Milrod's alleged breach of the employment contract. Under the employment contract, Beaudet would be entitled to damages if it were determined that Milrod terminated his employment without cause. Thus, Beaudet seeks to adjudicate whether he was fired for cause or without cause. Beaudet may have a valid breach of contract claim, but it is not the type of claim embraced by ch. 109, Stats., and not one to be brought by DILHR. Section 109.09, Stats., seeks to assure that employees are paid according to municipal wage scales,[4] for overtime[5] and that at least a minimum wage is paid.[6] In all of these instances, it is assumed that the wages claimed by the employee have been earned by the performance of personal services.

We reject DILHR's argument that Beaudet's remaining salary constituted a "wage deficiency" within the meaning of sec. 109.01(4), Stats. This section defines a wage deficiency as "the difference between the amount required by law to be paid and the amount actually paid to an employe." DILHR argues that because Milrod breached the employment contract, the liquidated damages provided for in the contract were an "amount required by law to be paid." This argument is meritless because, as discussed above, the question of whether damages should be paid hinges on whether or not Beaudet was discharged for cause. The amount allegedly due Beaudet is in no way required by law to be paid. Addi-

---

[4] Sec. 66.293, Stats.
[5] Sec. 103.02, Stats.
[6] Sec. 104.12, Stats.

tionally, the broad definition of "wage deficiency" requires a reference to the definition of "wages" and we have concluded that Beaudet is not owed any wages; therefore, DILHR cannot make a claim for Beaudet's wage deficiency.

DILHR finally argues that the trial court abused its discretion by awarding costs to Coatings and Milrod. DILHR contends that because the trial court did not reach the merits of the claim, costs were not awardable.

Costs are awardable to the prevailing party on a motion for summary judgment regardless of whether the merits of the case are reached.[7] Section 814.03(1), Stats., provides that "[i]f the plaintiff is not entitled to costs . . . the defendant shall be allowed costs . . . ." The trial court did not abuse its discretion in awarding costs to Coatings and Milrod.

*By the Court.*—Judgment affirmed.

---

[7] *See Saunders v. National Dairy Prod. Corp.*, 39 Wis. 2d 575, 583, 159 N.W.2d 603, 607 (1968).