COURT OF APPEALS
DECISION
DATED AND FILED

December 26, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP1532**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV2440

IN COURT OF APPEALS
DISTRICT II

---

AMERICAN OVERSIGHT,

PETITIONER-RESPONDENT,

V.

ROBIN VOS, EDWARD BLAZEL AND WISCONSIN STATE ASSEMBLY,

RESPONDENTS-APPELLANTS.

---

APPEAL from an order of the circuit court for Dane County: DIANE SCHLIPPER, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. American Oversight sought records under the Public Records Law[1] from the Wisconsin State Assembly, Assembly Speaker Robin Vos, and Assembly Chief Clerk Edward Blazel (collectively, the Assembly Appellants) relating to contractors engaged in an election investigation. Believing the Assembly Appellants had not fulfilled their statutory disclosure obligations, American Oversight successfully pursued mandamus relief and, later, contempt based on the Assembly Appellants' failure to produce requested documents. At the conclusion of the litigation, the circuit court concluded American Oversight was entitled to an attorneys' fees award of approximately $98,000.

¶2 The Assembly Appellants' appeal. Their arguments attacking the order awarding attorneys' fees can be broadly categorized in two groups. They first challenge the validity of the contempt order, asserting that Vos and Blazel were improperly subject to the mandamus order and that American Oversight failed to make a prima facie showing that any of the Assembly Appellants had violated it. We conclude Vos and Blazel have forfeited their specific challenge to the mandamus order by failing to raise it below. We also conclude the circuit court did not erroneously exercise its discretion when it determined American Oversight had satisfied its burden of showing a prima facie violation of the mandamus order.

¶3 The Assembly Appellants' remaining arguments generally assert that the circuit court erroneously exercised its discretion by awarding more in attorneys' fees than American Oversight was entitled to. They first assert no

---

[1] *See* WIS. STAT. §§ 19.32 to 19.37 (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

attorneys' fees can be awarded for the contempt because no further responsive documents were ultimately produced. Next, they argue no attorneys' fees can be awarded under the Public Records Law or the contempt statutes for the work of American Oversight's in-house legal counsel. Finally, they assert the court failed to adequately set forth its exercise of discretion on the record. We reject each of these arguments, conclude the court's award of attorneys' fees reflects a proper exercise of discretion, and affirm on that basis.

## BACKGROUND

¶4      On May 26, 2021, Vos announced that the Assembly planned to hire three former law enforcement officers and a supervising attorney to investigate the November 2020 election. In June, the Assembly retained former Wisconsin Supreme Court Justice Michael Gableman to supervise the investigation. Reacting to the public announcement, American Oversight submitted public records requests to the Assembly Appellants on July 20, 2021 and August 12, 2021. As described by American Oversight, the requests sought documents and communications "with the potential to shed light on the role of contractors in the Wisconsin Assembly's investigation of the November 2020 election."[2] For ease of reading, this opinion will refer to the records sought as the "contractor records."

¶5      Vos and Blazel produced some records in response to American Oversight's requests. Other requests went unanswered or were met with claims of

---

[2] American Oversight's petition described three July requests for contractor records: a "July Organizing Materials Request," a "July Work Product Request," and a "July Communications Request." The August requests were follow-up requests that sought "substantively the same categories of records as those sought by American Oversight's previous requests, but for a more recent time period."

no responsive records. American Oversight believed these responses (or non-responses) were inadequate and incomplete, noting in particular that the disclosures did not appear to reflect any attempt to search the records of Gableman or associated Assembly contractors. Under the theory that ***WIREdata, Inc. v. Village of Sussex***, 2008 WI 69, 310 Wis. 2d 397, 751 N.W.2d 736, made the Assembly Appellants responsible for disclosing such contractor records, American Oversight took legal action.

¶6 On October 8, 2021, American Oversight petitioned the circuit court for a writ of mandamus compelling the Assembly Appellants to produce the requested records. American Oversight accompanied the petition with an application for an alternative writ of mandamus.[3] American Oversight also sought reasonable attorneys' fees and costs pursuant to WIS. STAT. § 19.37(2).

¶7 The circuit court issued the alternative writ of mandamus and ordered the Assembly Appellants either to release the records sought by American Oversight or to show cause at a hearing on November 5, 2021, as to why the records should not be released. On or near the hearing date, the Assembly Appellants filed an answer to the application for an alternative writ, appearing to concede that they had produced only records in their "custody" and had not produced the contractor records American Oversight sought.

---

[3] "Mandamus" generally refers to a legal remedy to compel a government actor to fulfill a mandatory duty when there is no discretion in the matter. *See **State ex rel. Milwaukee Police Ass'n v. Jones***, 2000 WI App 146, ¶7 n.7, 237 Wis. 2d 840, 615 N.W.2d 190 (citing *mandamus*, BLACK'S LAW DICTIONARY (7th ed. 1999)). An alternative writ of mandamus is a "mandamus issued upon the first application for relief, commanding the defendant either to perform the act demanded or to appear before the court at a specified time to show cause for not performing it." ***Id.***

¶8      Instead, the Assembly Appellants argued they were under no obligation to turn over any contractor records because any such records were now in the possession of the "Office of Special Counsel" (OSC), a "'formally constituted subunit' of the Committee on Assembly Organization" that was created in late August 2021. They asserted, therefore, that the OSC was the "authority" to which American Oversight's requests should be directed, and as a corollary, that none of them was an "authority" under the public records law with respect to "records related to Justice Gableman's investigation."

¶9      At the November 5 show-cause hearing, the circuit court concluded mandamus relief was appropriate. It determined that even if OSC later became a separate authority, the Assembly Appellants were responsible for releasing any contractor records created prior to that time. The court ordered the Assembly Appellants to produce within ten business days any responsive contractor records that existed on or prior to August 30, 2021. The court also concluded that any objections to disclosure had been forfeited by the Assembly Appellants' failure to raise them, except insofar as the records were specifically exempted from disclosure by statute.

¶10     A few weeks later, American Oversight moved for remedial sanctions against the Assembly Appellants. As grounds, the motion asserted that nearly all of the records disclosed pursuant to the mandamus order were duplicative of records that had previously been produced—records that the Assembly Appellants had conceded were not the contractor records American Oversight sought.[4] Among other things, American Oversight noted a lack of

---

[4] According to American Oversight, 27 of the 148 pages of records produced following the circuit court order might have been contractor records, based upon a title page that said "Open

(continued)

records during the time Gableman worked as a coordinating attorney, including from publicized interstate trips related to the investigation, as well as "election integrity reports" referenced on a public-facing investigation website. Vos, individually, filed a response to the contempt motion, asserting that the motion was deficient, that he was not subject to the mandamus order because he was not a party to any contracts with the investigators, and that in any event he had complied with the mandamus order.

¶11 At a hearing on the contempt motion, the circuit court expressed concern with Vos's response, insofar as it offered no clarity regarding what efforts the Assembly Appellants had made to comply with the mandamus order. Because of this lack of clarity, the court concluded sanctions were inappropriate at that time. However, over the Assembly Appellants' objection, the court required a record custodian to appear at an evidentiary hearing to testify about the Assembly Appellants' efforts to comply with the mandamus order.

¶12 Based on the subsequent testimony of Blazel and Steve Fawcett, legal counsel to the Assembly Speaker's office, the circuit court concluded remedial contempt sanctions were appropriate against Vos and the Assembly.[5] In a detailed order, the court wrote that the testimony at the evidentiary hearing "revealed a collective and abject disregard for the Court's order," in that Vos "had

---

Records produced by WI Special Counsel 11/19/21." However, American Oversight noted those pages included records that had been previously produced or that were created by the Assembly Appellants and not the contractors.

[5] The circuit court found that sanctions against Blazel would be duplicative of sanctions against the Assembly, which bore primary responsibility for the records under WIS. STAT. § 19.33(7).

delegated the search for contractors' records to an employee who did nothing more than send one vague email to one contractor."

¶13   As remedial sanctions, the circuit court entered an order requiring Vos and the Assembly to pay American Oversight's costs and fees incurred in bringing the contempt motion. The court provided Vos and the Assembly fourteen days to purge the contempt, with a $1,000 forfeiture for each day of noncompliance after that time. The purge conditions, among other things, required Vos and the Assembly to provide evidentiary proof of compliance with their duties under the Public Records Law and to provide evidentiary proof of reasonable efforts to search for lost, missing or unavailable responsive records.

¶14   Following the contempt order, counsel for the Assembly Appellants filed a letter and supporting declarations asserting that Vos and the Assembly had complied with the purge conditions. American Oversight disagreed. The Assembly Appellants resisted the notion that more was required of them to preserve and produce contractor records, repeatedly asserting that they "don't have control over Mr. Gableman."[6] The circuit court therefore required the Assembly Appellants to provide an affidavit from Gableman regarding what efforts he had undertaken to comply with the Public Records Law as the Assembly Appellants' contractor during the time period in question.

¶15   Gableman submitted an affidavit and appeared as a witness at the follow-up June 23, 2022 hearing. Based upon his testimony, the circuit court

---

[6] Vos and Blazel, along with several other contractors and attorneys, provided declarations in connection with the request to purge the contempt, but there was no declaration authored by Gableman.

concluded the purge conditions were satisfied. In essence, the court accepted Gableman's testimony that very little work had been done during the early months of the investigation, and records that would have been responsive to American Oversight's requests had been routinely deleted. The court concluded there were "no more documents to be gained" as a result of the contempt, and it left the matter open as to whether other sanctions under the Public Records Law were appropriate given the destruction and non-production of responsive documents.

¶16 American Oversight then submitted a motion for costs, fees and damages, seeking approximately $93,000 in attorneys' fees and costs for the merits and contempt phases.[7] That amount was bifurcated as follows: approximately $17,000 in attorneys' fees for the merits phase (i.e., from inception until the mandamus order), pursuant to WIS. STAT. § 19.37(2)(a); and approximately $76,000 in attorneys' fees for the contempt phase, pursuant to WIS. STAT. § 785.04(1)(a). Both amounts were calculated using the "lodestar" method of multiplying actual hours expended by a reasonable hourly rate. *See Meinecke v. Thyes*, 2021 WI App 58, ¶23 n.9, 399 Wis. 2d 1, 963 N.W.2d 816. The Assembly Appellants challenged the reasonableness of some of the attorneys' fees and asserted that the amount of the fees should be reduced based on American Oversight's status as a non-profit corporation.

¶17 After chronicling the extensive history of the litigation, the circuit court concluded an award of attorneys' fees was appropriate in both the merits and contempt phases, and that the lodestar method was an appropriate way to

---

[7] American Oversight also sought punitive damages, which request was rejected by the circuit court on the basis that taxpayers would ultimately bear the burden of a punitive damages award.

determine those fees. The court found the evidence submitted by American Oversight was sufficient to justify its fee request, except for an inadvertently duplicated filing fee of $189. It entered an order granting approximately $98,000 in attorneys' fees (the original $93,000 request supplemented by an additional $5,000 reflecting work through July 27, 2022). The Assembly Appellants now appeal the order awarding attorneys' fees.

## DISCUSSION

¶18 The Assembly Appellants' challenges to the attorneys' fees award fall into two general categories. They first challenge the validity of the circuit court's contempt finding. Vos and Blazel argue the mandamus order—and, it follows, the contempt order—was void as to them because they were not parties to any contract that would obligate them to produce contractor records. Next, the Assembly Appellants argue there could be no contempt in the first instance because American Oversight failed to make a prima facie showing that they had violated the mandamus order.

¶19 The Assembly Appellants' second categorical argument has several facets, all of which generally contend the circuit court erroneously exercised its discretion by awarding more in attorneys' fees than American Oversight was entitled to. The Assembly Appellants first assert that no attorneys' fees can be awarded for the contempt because no further responsive documents were ultimately produced. Next, they argue no attorneys' fees can be awarded under the Public Records Law or the contempt statutes for the work of American Oversight's in-house legal counsel. Finally, they assert the court failed to adequately set forth its exercise of discretion on the record.

¶20     For the reasons set forth below, we reject these arguments and affirm the circuit court's discretionary determinations as to the appropriate amount of attorneys' fees.

I.      *The Assembly Appellants' attempts to challenge the validity of the contempt order fail.*

> A. *Vos and Blazel have forfeited their argument that the mandamus order is void because they were not parties to an unspecified contract, and any subsequent voiding of the mandamus order would not automatically eliminate the contempt finding.*

¶21     Vos and Blazel first challenge the costs and fees award, contending they could not be held in contempt because the underlying mandamus order was unlawful.[8]  They argue that because "neither Vos nor Blazel had a contract with any election investigator, they cannot be responsible for the production of contractors' records pursuant to WIS. STAT. § 19.36(3)."

¶22     No variation of this argument was presented to the circuit court prior to or during the November 5, 2021 hearing, after which the court entered the relevant mandamus order.  "[T]he often repeated rule in this state [is] that issues not considered by the circuit court will not be considered for the first time on appeal." ***Jackson v. Benson***, 218 Wis. 2d 835, 901, 578 N.W.2d 602 (1998).

¶23     The Assembly Appellants respond that they did raise the issue of their status as nonparties to a contract in their answer to the petition for an alternative writ of mandamus.  To the contrary, their answer only contained a

---

[8]  We note Blazel was specifically excluded from the contempt order.

generic denial that each of Vos, Blazel, *and* the Assembly was "an authority in regard to records related to Justice Gableman's investigation."[9]

¶24     Even if Vos and Blazel intended by this denial to raise a contractual defense, their argument here fails. "A litigant must raise an issue with sufficient prominence such that the trial court understands that it is being called upon to make a ruling." *Bishop v. City of Burlington*, 2001 WI App 154, ¶8, 246 Wis. 2d 879, 631 N.W.2d 656. Nothing about Vos's and Blazel's blanket denials alerted the circuit court that their status as nonparties to an unspecified contract were relevant to the court's consideration of the alternative writ.

¶25     Nor did Vos and Blazel present such an argument at the November 5 hearing. The Assembly Appellants offered a "boiled-down, real easy response" to American Oversight's request for records: the request "should go to the Office of Special Counsel." The Assembly Appellants argued that office had sole custody of any responsive records and should be the sole entity to determine whether there were exceptions to disclosure. In articulating this argument, Vos and Blazel— who were represented by the same counsel as the Assembly—did not maintain that they were immunized against the record request because they were not parties to a contract. As a result of their failure to develop a contractual argument before the circuit court, Vos and Blazel are precluded from raising it now for the first time.

¶26     Moreover, even if Vos and Blazel believed the mandamus order was erroneous, their beliefs in that respect did not absolve them of responsibility for

---

[9] An "authority" under the Public Records Law is defined to include a list of entities or officials having custody of a record. *See* WIS. STAT. § 19.32(1). The answer acknowledged that each of the Assembly Appellants was an "authority" for other records.

compliance. Until an order is reversed through the appellate process, a litigant must abide by its terms. *State v. Campbell*, 2006 WI 99, ¶49, 294 Wis. 2d 100, 718 N.W.2d 649. And even if the mandamus order was to be set aside, doing so would not automatically erase a finding of contempt or eliminate an award of damages based on the contemptuous behavior. *See Getka v. Lader*, 71 Wis. 2d 237, 246-47, 238 N.W.2d 87 (1976). We are unpersuaded by Vos and Blazel's attempts to distinguish *Campbell* and *Getka*.

*B. The circuit court did not erroneously exercise its discretion when it found the Assembly Appellants in contempt of the mandamus order.*

¶27 A circuit court may impose remedial sanctions for the purpose of terminating a continuing violation of a court order. *See* WIS. STAT. §§ 785.01(3); 785.02. The court's use of the contempt power is reviewed for an erroneous exercise of discretion. *City of Wisconsin Dells v. Dells Fireworks, Inc.*, 197 Wis. 2d 1, 23, 539 N.W.2d 916 (Ct. App. 1995). We will uphold an exercise of discretion if the court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).

¶28 The Assembly Appellants do not appear to challenge the circuit court's determination that at the January 2022 hearing, they failed to satisfy their burden of demonstrating their conduct was not contemptuous. *See Joint Sch. Dist. No. 1 v. Wisconsin Rapids Educ. Ass'n*, 70 Wis. 2d 292, 321, 234 N.W.2d 289 (1975). Rather, their argument is that the burden never shifted to them in the first instance, because American Oversight failed to make a prima facie showing that the mandamus order had been violated. *See id.*

¶29     The circuit court did not erroneously exercise its discretion when it determined American Oversight had made a prima facie showing that the mandamus order had been violated.  As an initial matter, the Assembly Appellants acknowledge that American Oversight identified one document (an email from Gableman to Vos) that fell within the scope of the requested records but was not produced.  At a minimum, American Oversight's identification of one responsive but undisclosed record was sufficient to permit the court to infer that not all responsive contractor documents had been produced, contrary to the mandamus order.

¶30     The Assembly Appellants, however, argue that American Oversight had to additionally show that the email "was possessed by Respondents when its request was made" and "that it existed as of August 30, 2021."  The Assembly Appellants' invention of a "possession" requirement is inapt, insofar as the basis for the mandamus order was their failure to produce records in their *contractors'* possession.  *See* **WIREdata,** 310 Wis. 2d 397, ¶89 (holding a municipality may not avoid liability under the Public Records Law by delegating responsibility to an independent contractor to collect, maintain and keep its records).  As for whether the document existed on August 30, 2021:  the email itself was dated August 17, 2021, and the Assembly Appellants do not explain why that was insufficient to create an inference the document still existed just two weeks later.[10]

¶31     American Oversight identified other factual matters supporting an inference that not all responsive documents had been produced.   American

---

[10] We assume, in accordance with the Assembly Appellants' argument, that August 30, 2021, was the applicable date of preservation.

Oversight noted that none of the work product required by the various contracts had been disclosed. American Oversight also argued that it was inconceivable that the contractors had generated only twenty-seven pages of contractor records despite the breadth and scope of the elections investigation through August 30, 2021, which included the creation of a public-facing webpage inviting reports of fraud and trips to Arizona and South Dakota for investigative purposes. Based on this information, the circuit court could reasonably conclude that American Oversight had made a prima facie showing sufficient to shift the burden to the Assembly Appellants to demonstrate compliance with the mandamus order.

II.     *The circuit court did not erroneously exercise its discretion when it awarded American Oversight its attorneys' fees.*

¶32     The Assembly Appellants next challenge the circuit court's award of attorneys' fees to American Oversight. First, they argue that American Oversight cannot recover attorneys' fees relating to the contempt phase of the proceedings because no further responsive documents were ultimately produced. Second, they argue that in both the merits and the contempt phases, attorneys' fees attributable to the work of in-house counsel for a non-profit corporation are not recoverable. Third, they assert the court failed to sufficiently articulate its exercise of discretion when it awarded $98,000 in attorneys' fees. We reject these arguments as set forth below.

> A. *The circuit court acted within its discretion when awarding American Oversight its attorneys' fees relating to the contempt under* WIS. STAT. *§ 785.04(1)(a).*

¶33     Under WIS. STAT. § 785.04(1)(a), sanctions for remedial contempt may include "[p]ayment of a sum of money sufficient to compensate a party for a loss or injury suffered by the party as the result of a contempt of court." This is a

make-whole provision, ***Rand v. Rand***, 2010 WI App 98, ¶8, 327 Wis. 2d 778, 787 N.W.2d 445, and it is well-established that the amount can include attorney fees and other litigation costs, ***Town of Seymour v. City of Eau Claire***, 112 Wis. 2d 313, 320, 332 N.W.2d 821 (Ct. App. 1983).

¶34     The Assembly Appellants argue American Oversight was entitled to nothing because it was "not successful in the contempt proceeding," insofar as no further responsive records were ultimately produced.[11]   In so arguing, the Assembly Appellants do not cite to any case law interpreting WIS. STAT. § 785.04(1)(a).[12]   Rather, the Assembly Appellants appear to conflate a remedial contempt sanction with WIS. STAT. § 19.37(2), which makes attorney fees available to a records requester who "prevails in whole or in substantial part" in an action to enforce the Public Records Law.  We are unpersuaded the availability of reasonable attorney fees under the make-whole provision of § 785.04(1)(a) is contingent upon the production of additional records.

---

[11] Oddly, in the very next section of their brief-in-chief, the Assembly Appellants directly contradict this argument by asserting that "Chapter 785 is not a prevailing party statute in which the prevailing party is entitled to an award of attorney's fees."  We address below this related argument challenging the propriety of an attorney fees award for the work of in-house counsel.

[12] The closest they come is in their reply brief when citing ***Rand v. Rand***, 2010 WI App 98, 327 Wis. 2d 778, 787 N.W.2d 445, which was at least a state contempt case. ***Rand***, however, considered a different statutory authorization for an award of attorney fees, *see* WIS. STAT. § 767.54(3), and a different issue: whether the failure of the movant to obtain relief on all the asserted grounds for contempt precluded an award of the full attorney fees incurred when prosecuting the contempt motion.  The court resolved that issue by applying the "***Radford*** rule [which gauges the substantial success of a party] … to family law disputes under § 767.54," ***Rand***, 327 Wis. 2d 778, ¶8 (citation omitted), but so far as we can tell the rule has never been applied to remedial sanctions awarded under WIS. STAT. § 785.04(1)(a).

*B. The circuit court did not erroneously exercise its discretion when it awarded American Oversight reasonable attorneys' fees for the work of its in-house counsel.*

¶35    The Assembly Appellants also assert the circuit court erred when it awarded reasonable attorneys' fees to American Oversight for hours worked by American Oversight's in-house counsel.  The Assembly Appellants argue such fees are not available under either the Public Records Law or the contempt statutes.

*1. The Assembly Appellants have failed to demonstrate that the circuit court erroneously exercised its discretion when awarding in-house attorneys' fees under the Public Records Law.*

¶36    As mentioned above, if a "requester prevails in whole or in substantial part" in a mandamus action under WIS. STAT. § 19.37(1), the circuit court "shall award reasonable attorney fees."  Sec. 19.37(2)(a).  The Assembly Appellants argue the court erred when it concluded a record requester that is a non-profit corporation may recover attorney fees based on time expended by its in-house counsel.  The Assembly Appellants argue that permitting the recovery of such attorney fees would not advance the public policy goals of the Public Records Law.

¶37    We disagree, as there is an explicit legislative directive that the Public Records Law "shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business."  WIS. STAT. § 19.31.  This statement of policy applies to the Public Records Law's enforcement provisions.  *Meinecke*, 399 Wis. 2d 1, ¶14.  The Assembly Appellants cite no state case adopting their interpretation of WIS. STAT. § 19.37(2)(a).  And they acknowledge a "vast body of federal authority under federal fee shifting statutes and the Freedom of Information Act that have allowed

a for-profit corporation to recover attorney's fees for in-house counsel," even while they rely on case law to the contrary from two Midwestern states.

¶38 In our view, although Wisconsin case law does not address this specific point of law, existing authority on fee-shifting provisions and the public policy undergirding the Public Records Law favor American Oversight's interpretation. Specifically, in *Shands v. Castrovinci*, 115 Wis. 2d 352, 340 N.W.2d 506 (1983), a tenant brought suit against her landlord with the help of Legal Action of Wisconsin, a public interest law services organization. *Id.* at 356. Like the Public Records Law, the applicable statutory framework in that case contained a mandatory fee-shifting provision that contained no restrictions. *Id.* at 357.

¶39 The *Shands* court upheld an award of reasonable attorney fees, concluding that even though Legal Action of Wisconsin did not charge its clients for legal services rendered, the organization advanced the objectives of the legislation by litigating individual claims, by enforcing the general public policy objective of protecting tenants' rights, and by encouraging landlords to comply with their statutory duties. *Id.* at 360. For similar reasons, we conclude that a reasonable attorney fees award under WIS. STAT. § 19.37(2)(a) may include fees based on time expended by a non-profit corporation's in-house legal counsel.

¶40 The Assembly Appellants argue this conclusion is contrary to *State ex rel. Young v. Shaw*, 165 Wis. 2d 276, 477 N.W.2d 340 (Ct. App. 1991), but that case is easily distinguishable. There, we concluded that reasonable attorney fees are not available to a litigant-attorney pursuing a mandamus action pro se. We reasoned that "[t]he provision for attorney[] fees implies the existence of an attorney-client relationship. If that relationship does not exist, the fees cannot be

awarded." *Id.* at 295. Here, the Assembly Appellants do not argue American Oversight lacked an attorney-client relationship with its in-house legal counsel so as to preclude an award of attorney fees under *Shaw*.

> 2. *The Assembly Appellants have failed to establish that the circuit court erroneously exercised its discretion when awarding attorneys' fees for work by in-house counsel relating to the contempt.*

¶41     Again relying on the make-whole nature of contempt sanctions, the Assembly Appellants argue that reasonable attorney fees are unavailable under WIS. STAT. § 785.04(1)(a) for work performed by in-house counsel. The contours of this argument are unclear; as best we can tell, the Assembly Appellants appear to argue American Oversight's fee request does not reflect the actual expenses incurred by the assignment of in-house counsel to the contempt matter.

¶42     As with WIS. STAT. § 19.37(2)(a), we do not perceive WIS. STAT. § 785.04(1)(a) to restrict the amount of attorney fees available for the work of in-house counsel. If the idea is merely that an attorney fees award arising from the contemptuous conduct of the opposing party should reflect actual costs incurred, the Assembly Appellants have failed to demonstrate that American Oversight received excessive compensation.[13]

---

[13] There appears to be a conflict in the case law about the standard of review to apply when reviewing the amount of an attorney fees award under WIS. STAT. § 785.04. *Compare Town of Seymour v. City of Eau Claire*, 112 Wis. 2d 313, 321, 332 N.W.2d 821 (Ct. App. 1983) ("This court independently reviews attorney[] fees whenever they are challenged on appeal.") *with Benn v. Benn*, 230 Wis. 2d 301, 308, 602 N.W.2d 65 (Ct. App. 1999) ("[T]he circuit court's award of attorney fees under § 785.04 is a discretionary act."). Because the Assembly Appellants' assertions arguably implicate a matter of statutory interpretation, for the sake of this particular argument we apply a de novo standard of review. *See Seider v. O'Connell*, 2000 WI 76, ¶26, 236 Wis. 2d 211, 612 N.W.2d 659.

¶43    Specifically, aside from citing **Shaw**, the Assembly Appellants do not dispute the notion that American Oversight sustained *some* loss by directing its staff attorney hours to litigating the contempt.  Those were hours the staff attorneys were unavailable to address other matters.  The operative question, then, concerns the delta between the market rate requested by American Oversight and the actual cost of the legal services rendered.

¶44    On this point, the Assembly Appellants have no answer.  They merely assert that American Oversight was entitled to nothing for its in-house staff work—an argument plainly contrary to the "make-whole" purpose of the statute.  The record below is no more enlightening; in their briefing, without citation to anything in the circuit court record, the Assembly Appellants merely remarked that "Attorney Colombo and the other [American Oversight] attorneys are salaried employees."  The Assembly Appellants have not directed us to any evidence that the staff attorneys for American Oversight were actually paid less than the designated market rate.  Accordingly, the Assembly Appellants have failed to demonstrate the court awarded excessive attorneys' fees under WIS. STAT. § 785.04(1)(a).

> C. *The circuit court's ruling on American Oversight's attorneys' fees request adequately demonstrates an exercise of discretion.*

¶45    The Assembly Appellants' final argument is that the circuit court's comments demonstrate it failed to exercise its discretion at all when it awarded American Oversight most of its requested attorneys' fees.  Review of an exercise of discretion looks to whether the court employed "a logical rationale based on the appropriate legal principles and facts of record." **Kolupar v. Wilde Pontiac Cadillac, Inc.**, 2004 WI 112, ¶22, 275 Wis. 2d 1, 683 N.W.2d 58.  When exercising its discretion, a court must explain its reasoning on the record to ensure

the soundness of its own decision making and to facilitate judicial review. *State v. Scott*, 2018 WI 74, ¶38, 382 Wis. 2d 476, 914 N.W.2d 141.

¶46 The circuit court here adequately stated its rationale for adopting much of American Oversight's attorneys' fee request. It explicitly referred to the lodestar method and to the evidence American Oversight submitted as being sufficient to justify the fee request. The Assembly Appellants appear to argue the court should have undertaken a more rigorous process of explaining precisely why it was rejecting their various challenges to the billing statements. But not only were many of those challenges conclusory (for example, baldly labeling the amount of time for a particular task as "excessive"), they were also implicitly rejected by the court given its comments. In truth, what the Assembly Appellants ask us to do is substitute our judgment for that of the circuit court, which we will not do. *See Kolupar*, 275 Wis. 2d 1, ¶22.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.