In re the marriage of:

Richard J. Rand, Respondent-Appellant,

v.

Marcy L. Rand, Petitioner-Respondent.

Court of Appeals

*No. 2009AP2241. Submitted on briefs June 1, 2010.*
*—Decided June 29, 2010.*

2010 WI App 98

(Also reported in 787 N.W.2d 445.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *John E. Machulak* and *Eugene Bykhovsky* of *Machulak, Robertson & Sodos, S.C.*, Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Thomas W. St. John* and *Christopher M. Meuler* of *Friebert, Finerty & St. John, S.C.*, Milwaukee

Before Curley, P.J., Fine and Brunner, JJ.

¶ 1. FINE, J.   Richard J. Rand appeals an order directing him to pay his former wife, Marcy L. Wendt, $47,190 in attorney's fees and costs resulting from the circuit court's determination that Rand was in contempt of court because, as phrased by the circuit court, he "failed to do what was required of him by the terms of the parties['] divorce judgment," namely, timely report an increase in income that would affect his child-support obligations. The finding of contempt was entered in an earlier proceeding, and Rand appealed the attorney-fee award of $40,000 in a one-judge appeal

under Wis. Stat. § 752.31(2)(h) & (3) (Appeals in "[c]ases involving contempt of court under ch. 785" are "decided by one court of appeals judge," with exceptions not relevant here.). He did not, however, "challenge the circuit court's finding him in contempt." *Rand v. Rand,* No. 2007–AP-84, unpublished slip op. ¶ 2 (WI App Aug. 14, 2007). We concluded that the circuit court did not adequately explain how it picked $40,000, and remanded, pointing out that Rand was entitled at the hearing "to challenge [Wendt's] claims of causation, as well as the necessity for and reasonableness of the fees she seeks." *Id.,* ¶ 6. On remand, a different circuit court held an extensive hearing over four trial days, from May of 2008 to January of 2009, and issued a written decision awarding the $47,190.

¶ 2. Rand does not dispute the hourly rate charged by Wendt's lawyers, but, rather contends that they should only get attorney's fees that are commensurate with their success in connection with the relief they sought. Rand also contends that the fees awarded to Wendt's lawyers should be reduced because, Rand argues, the lawyers over-tried the contempt matter and did not offer to settle in good faith. We affirm.

## I.

¶ 3. The parties were divorced in May of 1997 after a marriage of more than seventeen years. They have three children. Among other things, their marital settlement agreement, which was incorporated into the divorce judgment, required Rand to pay $1,000 a month in child support for each of their children, and declared that this obligation "shall not be increased due to [Rand]'s increase in earned income, until [Rand]'s earned income exceeds $100,000 per year." The divorce judgment further provided: "if you are required to

make any child support payments, you must notify the clerk of courts within ten (10) days of . . . any substantial change in the amount of your income such that your ability to pay support is affected." Although Rand earned more than $100,000 for some years after entry of the divorce judgment, he did not timely tell either the clerk of courts or Wendt.

¶ 4. In April of 2006, Wendt filed a motion to "enforce the judgment of divorce and for contempt." (Uppercasing omitted.) Specifically, Wendt's motion asked for the following relief: "an order enforcing the Judgment of Divorce, finding [Rand] in contempt, adjusting child support retroactive to the date of divorce due to [Rand]'s misreporting of income for the years following the divorce, modifying the Judgment of Divorce to include property undisclosed by [Rand], [and] awarding [Wendt] her attorney fees and costs and any other relief the court deems necessary." An affidavit executed by Wendt and attached to the motion spelled out her concerns:

- She "recently learned that [Rand]'s income immediately exceeded $100,000 after our divorce was final," but that he never told her or the court.

- As a result of the increase in Rand's income, she wanted his child-support obligation modified, retroactive to "May 1997 because that was when [Rand]'s income increased even though I did not discover it until recently."

- Although Rand was to pay one-half of her out-of-pocket medical expenses for their children, "[s]ince our divorce, I have repeatedly asked him to pay his half of expenses, but he never has." Attached to Wendt's affidavit was what the affidavit described as "various emails that I have sent to him requesting

that he pay his half of the out of pocket medical expenses." Her affidavit asked that she be so reimbursed.

- Rand "failed to disclose close to $300,000 in passive loss carry forward credits to which I would have been entitled to half." She further alleged, "I believe that I would have been able to use it to offset other passive income, but even if I was not able to do so, I would have negotiated a different property division with knowledge of its existence." She sought "additional funds to compensate for my interest in the value of the loss carryforward." [*Sic*]

- She also indicated that although Rand was required to carry a $300,000 life-insurance policy with their children as beneficiaries, she was "concerned that he had not done that and request proof thereof."

- She also complained that because Rand, according to her affidavit, took a loan against the parties' homestead, the security of her interest in the property, which was designed to guarantee a "final payment" of $300,000 on their property division, she would "have no recourse" if he did not pay that money.

¶ 5.   After the fee hearing, the circuit court ordered Rand to pay the full amount of Wendt's lawyers' fees in connection with the motion, even though Wendt's lawyers were unable to parse their fee charges to determine how much were attributable to which aspect of the claims Wendt asserted, and even though other disputes were either resolved or withdrawn. The circuit court ruled that despite Rand's attempt to categorize Wendt's motion as one asserting multiple "causes of action," the contempt motion was unitary: Wendt "did not bring a number of separate claims or causes of action. She brought a motion seeking enforce-

ment of the divorce judgment and a finding of contempt, and she provided a number of bases for doing so. The motion arose from a common set of facts demonstrating [Rand]'s contemptuous conduct." Further, the circuit court rejected Rand's contentions that the fees sought by Wendt's lawyers were inflated by over-trying the contempt matter, that a reduction in the fee award was required because they were not fully successful in getting what they originally sought, and that the lawyers had improperly refused to settle the case when the fees were lower, determining that Rand's intransigence and strategy drove "up the cost[s] of this litigation."

## II.

¶ 6. "When a circuit court awards attorney fees, the amount of the award is left to the discretion of the court. We uphold the circuit court's determination unless the circuit court erroneously exercised its discretion." *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶ 22, 275 Wis. 2d 1, 15, 683 N.W.2d 58, 65. (citations omitted). Among the factors to be considered are those set out in Supreme Court Rule 20:1.5(a), which we quote below. *Kolupar*, 2004 WI 112, ¶ 25, 275 Wis. 2d at 16, 683 N.W.2d at 66. *See also id.*, 2004 WI 112, ¶ 26, 275 Wis. 2d at 17, 683 N.W.2d at 66 ("Although SCR 20:1.5 does not purport to be exhaustive, its factors encompass a variety of considerations appropriate in the fee-shifting context."). A circuit court's findings of fact, of course, will be upheld unless they are "clearly erroneous." WIS. STAT. RULE 805.17(2).

¶ 7. As we have seen, one of Rand's arguments against the award to Wendt of all her attorney's fees in the contempt action is that she did not get everything

784

she sought in that action. However, a "losing party is not entitled to a reduction in attorney's fees for time spent on unsuccessful claims, if the winning party achieved substantial success and the unsuccessful claims were brought and pursued in good faith" especially where all of the "claims arise out of a common core of facts." *Radford v. J.J.B. Enterprises, Ltd.*, 163 Wis. 2d 534, 550, 472 N.W.2d 790, 797 (Ct. App. 1991) (fees under Wis. Stat. § 100.18).[1] The circuit court determined that this make-whole rule applies in family court actions as well. We agree.

¶ 8.   Wisconsin Stat. § 767.54 provides:

In an action in which the court has ordered a party to pay child or family support under this chapter, including an action to revise a judgment or order under s. 767.59, the court shall require the parties annually to exchange financial information. Information disclosed under this section is subject to s. 767.127(3). A party who fails to furnish information required by the court under this section may be proceeded against for con-

---

[1] *Radford v. J.J.B. Enterprises, Ltd.*, 163 Wis. 2d 534, 550, 472 N.W.2d 790, 797 (Ct. App. 1991), relied on, among other federal decisions, the analysis of fee-shifting statutes in *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (A "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.") (citation omitted) (Civil Rights Attorney's Fees Awards Act). *See also Hardt v. Reliance Standard Life Ins. Co.*, ___ U.S. ___, 130 S.Ct. 2149, 2152, 2157–2158 (May 24, 2010) (Applying the "some degree of success" standard to guide courts in applying a fee-shifting statute that did not condition a fee award to the "prevailing party.") (Employee Retirement Income Security Act).

tempt of court under ch. 785. If the court finds that a party has failed to furnish information required under this section, the court may award to the party bringing the action costs and, notwithstanding s. 814.04(1), reasonable attorney fees.

This is a remedial fee-shifting statute because it recognizes that without permitting a party to recover his or her attorney's fees when the party ordered to pay child support ignores the full-disclosure mandate it would, as a practical matter, be unlikely that such fraud would be uncovered, especially because the aggrieved party's attorney's fees might very well consume all or a significant part of the recovery. *See Bernier v. Bernier*, 2006 WI App 2, ¶ 12, 288 Wis. 2d 743, 752, 709 N.W.2d 453, 457 (Ct. App. 2005) (Fee-shifting statutes " 'contemplate that those recovering under them will be made whole.' ") (enforcement of physical-placement order) (quoted source omitted); *see also Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2007 WI 98, ¶ 37 n.15, 303 Wis. 2d 258, 281 n.15, 735 N.W.2d 93, 104 n.15. Further, § 767.54 specifically incorporates the contempt chapter, ch. 785, and Wɪs. Stat. § 785.04(1)(a) also permits the circuit court to direct the party in contempt to pay to the party harmed by the contempt "a sum of money *sufficient to compensate* [that] party for a loss or injury suffered by the party as the result of a contempt of court." (Emphasis added.) This, too, is a make-whole provision. *Town of Seymour v. City of Eau Claire*, 112 Wis. 2d 313, 320, 332 N.W.2d 821, 824 (Ct. App. 1983) ("[A]ttorney's fees that a person incurs while prosecuting a contempt action [are] losses and damages within the meaning of the contempt statute."). Thus, we agree, on our *de novo* review of the circuit court's legal analysis, that the *Radford* rule also applies to family law disputes under § 767.54. *See Garfoot v. Fireman's*

*Fund Ins. Co.*, 228 Wis. 2d 707, 717, 599 N.W.2d 411, 416 (Ct. App. 1999) (We review *de novo* whether the circuit court applied the correct legal standard.).

¶ 9.   As we have noted, *Kolupar* set out the factors in SCR 20:1.5(a) as appropriate considerations in fixing a fee-shifting award. They are:

(1)   the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)   the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)   the fee customarily charged in the locality for similar legal services;

(4)   the amount involved and the results obtained;

(5)   the time limitations imposed by the client or by the circumstances;

(6)   the nature and length of the professional relationship with the client;

(7)   the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)   whether the fee is fixed or contingent.

*Kolupar*, 2004 WI 112, ¶ 25, 275 Wis. 2d at 16, 683 N.W.2d at 66. The only factor pertinent here is, broadly, number (4) in light of Rand's lack of argument with respect to the other factors. We now turn to his contentions on this appeal.

A. *Alleged duty to apportion fees.*

¶ 10.   Rand's first claim of circuit court error is that by giving Wendt the full fee-award, it did not limit the award to "those fees . . . incurred in connection with

Mr. Rand's failure to report an increase in his income between 1999 and 2003." But, as we have seen from the affidavit attached to Wendt's April of 2006 motion, all of the matters encompassed by that motion arose "out of a common core of facts." *See Radford*, 163 Wis. 2d at 550, 472 N.W.2d at 797. That is, they all concerned Rand's intransigence in fully complying with the divorce judgment. Indeed, the circuit court found, as we have already seen, that Wendt's "motion arose from a common set of facts demonstrating [Rand]'s contemptuous conduct." This finding is supported by the Record and is not, by any stretch of the imagination, clearly erroneous.

B. *Alleged lack of success on some of the aspects of the motion for contempt.*

¶ 11. As Wendt's affidavit relates, the contempt motion sought relief in a number of interrelated areas in addition to Rand's not revealing that his income had passed the $100,000 threshold. We address each in turn.

(1) *Rand's failure to comply with the requirement that he reimburse Wendt for shared medical expenses.*

¶ 12. The transcript of the contempt hearing before the first circuit court indicates that after the circuit court found Rand in contempt, it directed him to reimburse Wendt for his share of the medical expenses: "I'm going to order reimbursement for the unpaid medical expenses, that portion which is Mr. Rand's share." The circuit court then asked the parties to come up with the correct amount, which they did. It was thus a fair conclusion for the fee-hearing circuit court to draw, at least inferentially, that but for the

contempt motion, Rand would have continued the stonewalling revealed in the emails attached to Wendt's contempt-motion affidavit. *See Schneller v. St. Mary's Hosp. Med. Ctr.*, 162 Wis. 2d 296, 311, 470 N.W.2d 873, 879 (1991) (trial court's findings may be implicit in its decision). A settlement triggered by a party's assertion of rights does not forfeit that party's right to attorney's fees under a fee-shifting statute. *Maher v. Gagne*, 448 U.S. 122, 129 (1980) ("The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees.") (action under 42 U.S.C. § 1988). Rand does not argue that Wendt asserted the shared-medical-expense aspect of the contempt motion in bad faith. Accordingly, whatever attorney's fees incurred by Wendt that were attributable to the shared-medical-expense dispute did not have to be accounted for separately.

(2) *Disclosure of passive-income loss.*

■

¶ 13. The nub of this contention was that the financial disclosure forms required by the divorce judgment did not reveal that Rand had a passive-income-loss carry-forward tax credit. Rand argued, however, that the credit was disclosed on the parties' income tax returns. Although much of the fee hearing was spent on this aspect of Wendt's claim, Wendt dropped the claim at the contempt hearing, and, under the *Radford* rule, Wendt's voluntary relinquishment of this claim does not forfeit her right to be fully reimbursed for her attorney's fees in connection with the contempt proceeding.

(3) *Assurance that Rand was maintaining the required life insurance for the children as beneficiaries.*

¶ 14. This was resolved without much difficulty. Rand does not show, however, that this aspect of Wendt's concern was asserted in bad faith; certainly, given the hiding of income and Rand's intransigence in connection with his medical-expense obligation (as revealed by the emails attached to Wendt's affidavit in support of the contempt motion), Wendt had reason to believe that Rand might not have complied with the life-insurance requirement as well. Further, as her affidavit reveals, all she sought was "proof" that the life insurance was in force. Under *Radford*, this does not forfeit her right to the attorney's fees.

(4) *Wendt's concern about the security for the final payment to her of the $300,000 as required by the divorce judgment.*

¶ 15. The parties resolved this issue as well, and, again, under *Radford*, this minor matter does not forfeit Wendt's right to the fees awarded by the circuit court.

(5) *Claim for additional child support based on Rand's hiding the fact that his income exceeded $100,000 per year for several years.*

¶ 16. Rand argues that because Wendt claimed to be entitled to $66,580.68 plus $44,049.00 in interest as a result of his nondisclosure of his increased income, but was only given $14,116.12 plus $12,249.75 in interest, she was insufficiently successful in the contempt action to warrant a full fee award. As we have seen, however, that is not the law. *See Radford*, 163 Wis. 2d at

550, 472 N.W.2d at 797 (The "losing party is not entitled to a reduction in attorney's fees for time spent on unsuccessful claims, if the winning party achieved substantial success and the unsuccessful claims were brought and pursued in good faith."). Wendt achieved the requisite "substantial success" by nailing down Rand's attempt to avoid his child-support obligations under the divorce judgment and by recouping child-support money that Rand should have paid without the need for the contempt proceedings. Significantly, as we see below, after filing her motion seeking to hold Rand in contempt, Wendt was willing to settle the child-support shortfall for close to what the circuit court ordered, plus her attorney's fees at the time. Additionally, Rand has not shown that Wendt's claim for increased child support as a result of his increased income was made in bad faith.

C. *Alleged lack of good-faith settlement attempts.*

¶ 17. Rand complains that Wendt did not comply with the rule of the Milwaukee County Circuit Court Family Division that requires, according to an exhibit received into evidence and accepted by the parties and by the circuit court as accurate, parties seeking family-court relief to first attempt to settle their differences. According to the exhibit, the provision was "designated as Rule I.C 'Pre-hearing Settlement Attempts' in the version of the rules that was published on January 17, 2008." As material here, the Rule provides: "With respect to . . . postjudgment [*sic*] motions brought after the time for appeal of judgment has expired, attempts to resolve the issues or difference between the parties, if not made prior to the filing of the motion, shall be made promptly after the motion has been served." Rule I.C.2. The parties agree that Wendt did not comply with this rule. Nevertheless, the circuit court determined that Wendt's attempts to settle her contempt-motion differences with

791

Rand were appropriate and did not warrant diminution of the attorney-fee award.

¶ 18.   As we have seen, Wendt filed her contempt motion in April of 2006. Her contempt-motion lawyers had not represented her in the divorce. Wendt's lawyer discussed settlement with Rand's lawyer in September and November of 2006. Wendt's lawyer testified at the fee hearing that he tried to settle the case with Rand on September 22, 2006, for approximately $30,000 in increased child support and some $22,000 in attorney fees. The child-support component of Wendt's settlement offer was thus fairly close to what the circuit court ultimately awarded, which, as we have seen, was some $26,000. Wendt's lawyer explained at the fee hearing that he wanted his client to be made whole; "[i]t made no sense" to give her increased child support only to have that money eaten by his fees. The case did not settle.

¶ 19.   It may be true, as Rand asserts in his brief, that *if* the case had settled before the contempt hearing or even before the first settlement attempt in September of 2006, Wendt's attorney's fees would be less. But that begs the question because Rand offers nothing beyond mere assertion that *had* Wendt's lawyers contacted his lawyers before September 22, 2006, the matter *would* have settled. Indeed, the case was not settled despite the September and November attempts. The circuit court's finding that Wendt adequately tried to resolve the matter is not clearly erroneous and thus it did not erroneously exercise its discretion in not reducing the fee award based on Rand's contention that Wendt did not try to settle the matter in good faith.

D. *Alleged over-trying the contempt motion.*

¶ 20.   Finally, Rand argues that the fees were pumped up because Wendt's lawyers over-tried the

contempt matter. He essentially claims that Wendt's assertion of anything other than Rand's not reporting his increase of income unjustly increased both his and her fees and that she should not, therefore, get all the attorney's fees her lawyers claimed.

¶ 21.   The contempt hearing was arduous and long because, as the Record reveals, Rand stonewalled at every turn on the non-reporting of income issue. He contended that his income did "[n]ot exactly" exceed the $100,000 threshold because the extra $2,000 per month he did not report did not go to him directly but, rather, to a company of which he was the sole owner. He testified at his contempt-hearing deposition, which was received as an exhibit at the fee hearing, that the $2,000 per month was diverted to his company because his accountant told him it should be. At the contempt hearing, Rand testified that the diversion "was done under the advice of accountants or for some other reason" in connection with his solely-owned company, and that he "didn't consider the child support obligations at the time it was done." The accountant testified at the contempt hearing, however, that he did not suggest the diversion to Rand. The first circuit court thus found Rand's testimony "not credible on many respects." That circuit court also noted that the contempt hearing was extended and made much more complex because Rand interjected into the hearing and discovery his disputes with his former business associates. The fee-hearing circuit court agreed:   "This Court received a small dose of that same argument when [Rand]'s counsel raised the issue of the alleged nefarious conduct of his former business partners and how they may have influenced [Wendt]'s decision to pursue the contempt in the first place." It also pointed out that Rand's "counsel spent considerable time during the [fee]

hearing before this court attempting to re-litigate the underlying finding of contempt by the original trial court, a contempt finding that was upheld by the Court of Appeals." Thus, the fee-hearing circuit court opined that Rand not Wendt "was instrumental in driving up the costs of litigation." The fee-hearing circuit court further found that Wendt's lawyer:

> credibly testified as to the reasons for bringing the contempt motion, the trial preparation necessary for presenting a persuasive contempt argument to the court, the settlement efforts he engaged in with [Rand]'s counsel in September and November of 2006, the steps he took during the trial to present evidence of [Rand]'s contempt, the fees associated with the case, his hourly rate and of course the ultimate favorable result.

Ironically, the fee-hearing circuit court's assessment of the need by Wendt's lawyers to be thorough in preparing and presenting their case against a slippery adversary like Rand, as both circuit courts found he was, was supported by the testimony of one of Rand's lawyers at the fee hearing when he indicated that if asked to take a case in the post-judgment stage, he would look at "[e]verything." He further explained:

> If there is a motion being brought based on something that was decided in the past pursuant to a Judgment of Divorce. It is imperative to look at everything that took place, if it is possible. I even sometimes ask for the transcripts to see what was verbally said at the time of the stipulated default or the trial in the case.

Rand has not credibly shown how or why the circuit court's findings that he, and not Wendt, was the cause of whatever over-trying there was in this matter were clearly erroneous. Accordingly the circuit court did not erroneously exercise its discretion in not reducing the fee award.

## III.

■

¶ 22. Subject to our caveat below, we conclude that the fee-hearing circuit court acted well within its discretion in crediting the testimony of Wendt's witnesses and in fixing the fee and costs award at $47,190. Further, Wendt's request that she be given her reasonable attorney's fees in connection with the fee-hearing and this appeal is granted. *See Chmill v. Friendly Ford-Mercury of Janesville, Inc.*, 154 Wis. 2d 407, 411–412, 414–415, 453 N.W.2d 197, 199, 200 (Ct. App. 1990) (party entitled to attorney's fees for costs of litigating a proper fee award under a fee-shifting statute, as well as those relating to the appeal); *see also Town of Seymour*, 112 Wis. 2d at 320, 332 N.W.2d at 824. We thus remand this matter to the circuit court for a proper ascertainment of fees for the proceedings before the second circuit court as well as this appeal.

■

¶ 23. In his reply brief, Rand says that Wendt's lawyer conceded that not all of the fees in his itemized bill for $47,190 were attributable to the contempt motion:

> Just so everybody is clear on this, the amount of the fees we ask for and were $40,000, is conservatively less than the amount, the outstanding amount, outstanding or incurred the 41485. The amount incurred was $47191.90. The number we asked for, already reflected the fact there was something in that bill that wasn't related to—all directed to the contempt proceedings.

It is not clear to what Wendt's lawyer was referring— the fees awarded by the first circuit court or those awarded by the fee-hearing circuit court, or the effect of

this on the fee-hearing's court's award. We are not a fact-finding court. *Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155, 159 n.3 (1980). Accordingly, on remand, the circuit court shall clarify what Wendt's lawyer meant and what effect, if any, it has on the award. The circuit court shall make brief findings of fact and conclusions of law in connection with this limited matter, in addition to its findings and conclusions in connection with our remand for the assessment of fees in connection with the fee hearing and this appeal.

*By the Court.*—Order affirmed and cause remanded.