# COURT OF APPEALS
## DECISION
## DATED AND FILED

## April 26, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal Nos. 2022AP95**<br>**2022AP96**<br>**2022AP97**<br>**STATE OF WISCONSIN** | **Cir. Ct. Nos. 2019TP192**<br>**2019TP193**<br>**2019TP194**<br><br>**IN COURT OF APPEALS**<br>**DISTRICT I** |

APPEAL NO. 2022AP95

IN THE INTEREST OF A.V., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

   V.

A.P.,

      RESPONDENT-APPELLANT.

**APPEAL NO. 2022AP96**

**IN THE INTEREST OF B.V., A PERSON UNDER THE AGE OF 18:**

**STATE OF WISCONSIN,**

       **PETITIONER-RESPONDENT,**

  **V.**

**A.P.,**

       **RESPONDENT-APPELLANT.**

**APPEAL NO. 2022AP97**

**IN THE INTEREST OF B.P., A PERSON UNDER THE AGE OF 18:**

**STATE OF WISCONSIN,**

   **PETITIONER-RESPONDENT,**

 **V.**

**A.P.,**

   **RESPONDENT-APPELLANT.**

---

   APPEAL from an order of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Reversed and cause remanded for further proceedings*.

  ¶1  WHITE, J.[1] A.P. appeals the order terminating her parental rights to A.V., B.V., and B.P. A.P. argues that the circuit court failed to consider the wishes of the children, a required factor in the disposition of termination of parental rights (TPR) actions. Upon review, we agree and reverse the order and remand for further proceedings.

## BACKGROUND

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶2      In October 2019, the State filed petitions to terminate A.P.'s parental rights for A.V., born in February 2015; B.V., born in March 2017; and B.P., born in March 2018.[2]  A.V. and B.V. were found to be children in need of protection or services (CHIPS) in September 2017.[3]  B.P. was found to be a child in need of protection or services in July 2018.  As grounds for the involuntary termination of A.P.'s parental rights, the State alleged continuing CHIPS and failure to assume parental responsibilities.

¶3      In April 2021, A.P. entered a no contest plea to the continuing CHIPS ground for the TPR petition.  In June 2021, the State conducted the "prove up" of the TPR grounds through testimony from the Children's Wisconsin family case manager.  Based on the no contest plea and the prove up testimony, the circuit court made a finding of A.P.'s parental unfitness on the ground of continuing CHIPS.

¶4      The case proceeded to the dispositional phase.  The family case manager testified about the children's ages, health, time out of parental care, and the foster parents who were the primary adoptive resource for all three children.  The court further heard testimony from three staff members of the Multicultural Trauma and Addiction Treatment Center of Wisconsin; the clinic director, A.P.'s therapist, and the family therapist.  The house manager from Casa Maria, where

---

[2] A.P.'s three children were subject to separate TPR actions that were tried together at the circuit court and are consolidated on appeal.  For ease of reading, we refer to the cases in the singular.

[3] "CHIPS is the commonly used acronym to denote the phrase 'child in need of protection or services' as used in the Wisconsin Children's Code, chapter 48, Stats." *Marinette Cnty. v. Tammy C.*, 219 Wis. 2d 206, 209 n.1, 579 N.W.2d 635 (1998).

A.P. has been staying during the pendency of reunification efforts, also testified. Finally, the court heard testimony from the stepmother of A.P.'s older children (not parties within this action), an aunt of two of the children, and A.P. herself.

¶5 After arguments from the State, the GAL, and A.P.'s counsel, the court decided to issue a written decision at a later date. In the written decision, the court reviewed five of the six required statutory factors:

> **A. The Children Are Likely To Be Adopted After Termination.**
>
> The [foster parents] are ready, able and willing to adopt the children if parental rights are terminated. They are licensed to adopt and have shown unwavering commitment to the children. The [c]ourt concludes this factor weighs in favor of termination.
>
> **B. The Children's Age And Health, Both At The Time Of Disposition And At The Time They Were Removed From Home, Indicate They Are Very Adoptable.**
>
> If something tragic were to occur and the [foster parents] were not able to adopt, the children are very adoptable. Although the boys suffered from withdrawal symptoms at birth, neither appears to have any residual health concerns. [B.V.] is purportedly overactive, but that can be managed. All three of the kids are bright, happy and overall healthy. The [c]ourt concludes this factor weighs in favor of termination.
>
> **C. [A.V.] and [B.V.] Have A Very Limited Relationship With [A.P.] and [B.P.] Has No Relationship At All.**
>
> ….
>
> The Court concludes they do not have a substantial relationship with her …. None of the children has a substantial relationship with any maternal extended family. Given this, the [c]ourt concludes the children would not be harmed by severing the relationship with [A.P.], their two half-siblings, and [A.P.'s] extended family …. The [c]ourt concludes this factor weighs in favor of termination.

5

**D. [B.P.] Has Been Separated From [A.P.] For Essentially His Entire Life, And [A.V.] and [B.V.] Have Been Separated For The Majority of Theirs.**

[B.P.] has been separated from his mother for his entire life, save the first twelve days and six hours worth of prison visits. [A.V.] has not lived with [A.P.] for much of her life. Even before removal, she was living with a paternal aunt. [B.V.] only lived with his mother for a couple months after his birth. The children have known no other home than the [foster parents], at least in conscious memory. While all the statutory factors are important, this one is paramount in the [c]ourt's estimation. Little children do not bond with people with whom they do not spend time. By contrast, they do bond with those who care for them on a day-to-day basis.

….

**E. The Children Will Be Able To Enter Into A More Stable And Permanent Family Relationship As A Result Of The Termination, Taking Into Account The Conditions Of Their Current Placement, And The Likelihood Of Future Placements.**

Children need[] stability and permanence. That goal is embedded in Wisconsin's child welfare statutes. Removal from the home is traumatic. Likewise, separation from tightly bonded relationships is as well. Here, these children have no conscious memory of any home other than the [foster parents']. They are bonded to the [foster parents]. Even more fundamentally, they are bonded to each other. Termination will allow the children to remain in the [foster parents'] home with each other. The [c]ourt concludes this factor weighs in favor of termination.

The court then ordered the termination of A.P.'s parental rights.[4] This appeal follows.

**DISCUSSION**

---

[4] The parental rights of the father of A.V. and B.V. and the father of B.P. are not at issue in this appeal. We do not address them further.

6

¶6      A.P. argues that the circuit court erroneously exercised its direction when it terminated her parental rights without consideration of all six factors as required by Wisconsin law. She asserts that the circuit court did not address the children's wishes in the best interest consideration. The State and the GAL appear to concede that the circuit court did not expressly address this issue, but argue that the record supports the court's decision. We disagree that the record shows that the circuit court exercised its discretion on all six factors.

¶7      When the circuit court finds that grounds exist for a TPR, the court then conducts a dispositional hearing to determine whether TPR is in the best interests of the child. WIS. STAT. § 48.426; *see* ***Sheboygan Cnty. DHS v. Julie A.B.***, 2002 WI 95, ¶28, 255 Wis. 2d 170, 648 N.W.2d 402. The circuit court "shall consider," but is not limited to, the following six factors:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

Sec. 48.426(3). The circuit court is not required to afford greater weight to any particular factor, although the "record should reflect adequate consideration of and

7

weight to each factor." ***State v. Margaret H.***, 2000 WI 42, ¶35, 234 Wis. 2d 606, 610 N.W.2d 475.

¶8     The decision to terminate parental rights is within the discretion of the circuit court.  *See* ***Gerald O. v. Susan R.,*** 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996).  We will sustain a circuit court's discretionary decision unless the court erroneously exercised its discretion.  WIS. STAT. § 805.17(2).  A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach.[5]  ***Dane County DHS v. Mable K.***, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.  This court "will search the record for reasons to sustain the [circuit] court's exercise of discretion." ***Lofthus v. Lofthus***, 2004 WI App 65, ¶21, 270 Wis. 2d 515, 678 N.W.2d 393.

¶9     A.P. does not dispute that the circuit court addressed five of the six required factors in its written decision.  A.P. contends that the circuit court failed to address the wishes of the children, as contemplated in WIS. STAT. § 48.426(3)(d).  We are thus faced with a question over the adequacy of the court's findings.  "Adequate findings must be made in order to protect the rights of litigants and to facilitate review of the record by an appellate court." ***Minguey v. Brookens***, 100 Wis. 2d 681, 687, 303 N.W.2d 581 (1981).  "Although generally a [circuit] court's memorandum decision will supply a basis for meaningful review,

---

[5] We note that the State articulates a standard of review that suggests a litigant would need to show that the circuit court erred in its consideration of the facts *and* the standard of law *and* in its demonstrated rational decision-making.  It is not an appellant's burden to show error in all three steps.  However, if our review shows that the circuit court's considerations in all three steps were without error, then its decision is not an erroneous exercise of discretion.

we have previously expressed a preference for remanding the matter to the [circuit] court when confronted with inadequate findings in family law or domestic relations cases." *Id.* at 688.

¶10 The State and the GAL appear to concede that the circuit court did not make findings on this factor. But they argue that in the absence of express findings, we must search the record. However, our review is not to determine the children's wishes, but rather to discern whether the circuit court properly considered this factor in exercising its discretion to terminate A.P.'s parental rights. Our review of the record does not allow us to determine credibility or find facts. *See* **Rand v. Rand**, 2010 WI App 98, ¶23, 327 Wis. 2d 778, 787 N.W.2d 445. We are looking for evidence that the circuit court exercised its discretion, which "contemplates a process of reasoning. The process depends on facts that are of record or that are reasonably derived by inference from the record …. [The circuit court] must set forth the basis for the exercise of discretion" based on a logical rationale and proper legal standards. **Perrenoud v. Perrenoud**, 82 Wis. 2d 36, 49-50, 260 N.W.2d 658 (1978).

¶11 The record reflects there was testimony regarding the children's wishes. In response to the State's questioning about the children's wishes regarding their long-term home, the family case manager testified that A.V. got upset when she was told she might live with A.P. and she didn't want to leave "mom and dad" as she refers to her foster parents. Further, the family case manager stated that B.V. and B.P. were considered too young to understand, but B.V. was upset about having to attend family therapy sessions and visits with A.P. In its closing argument to the court, the State reviewed its position on the children's wishes: "Obviously, their age makes it difficult to assess [their wishes],

9

but, I do think it's important to know that, again, [the foster parents' home] has been the home that they have known for a significant portion if not all of their life."

¶12    On cross-examination, the family case manager was asked, "Is there anything in the notes that indicate that the kids get to [A.P.'s] house and say, "Oh, I want to go home"?" She testified in response, "No, I've never read that." A.P.'s counsel also asked, "Isn't it possible that the kids are saying one thing to the [foster parents] and one thing to [A.P.]"? The family case manager responded, "Sure, I suppose that's possible."

¶13    Additionally, the family therapist, who conducted family therapy with A.P. and the two older children, testified that A.V. and B.V. seem bonded to A.P. In contrast to the family case manager's testimony that B.V. in particular was unhappy to attend therapy, the family therapist testified that she had never had an indication that A.V. or B.V. did not want to attend family therapy. Further, the therapist testified that A.V. asked for "clarification for when she's coming home," which the therapist stated meant staying with A.P. In closing arguments, A.P.'s counsel argued,

> [I]t seems to me that they switch depending on which adult they're talking to. I don't believe that anyone is lying. I think that when the case manager says they tell her they don't want to go there, she's not lying. When [the children's paternal aunt] says they say to her, how many sleeps until I can come back here? How many sleeps can I go to my mom's? I'm sure they're saying that. So … it's just the way this is when you have all these family relationships.

¶14    Ultimately, our review of the record shows that there was conflicting testimony about many of the facts and reasonable inferences of those facts in this

10

case including the children's wishes. The circuit court exercises its discretion in TPR actions because determining the best interests of a child "depends on firsthand observation and experience with the persons involved." *Gerald O.*, 203 Wis. 2d at 152. Here, there were disputes in the testimony regarding the children's relationship with A.P. The circuit court failed to address which testimony it found more credible or what it concluded the children's wishes were. Although we search the record and consider reasonable inferences from the facts in the record, there must be facts in the record upon which we can base our review to discern the court's reasonable exercise of discretion.

¶15 The six factors in WIS. STAT. § 48.426(3) are mandatory considerations for the circuit court in TPR decisions. "While it is within the province of the circuit court to determine where the best interests of the child lie, the record should reflect adequate consideration of and weight to each factor." *Margaret H.*, 234 Wis. 2d 606, ¶35. The circuit court's written decision is the only statement of its conclusions and fact-finding. It did not consider the fourth required factor, the wishes of the children. Therefore, we discern an erroneous exercise of discretion because the court failed to make adequate findings relating to its consideration of the relevant facts under the applicable standard of law.

## CONCLUSION

¶16 We conclude that the circuit court erroneously exercised its discretion when it terminated A.P.'s parental rights to A.V., B.V., and B.P. by not considering the mandatory statutory factor of the children's wishes. Therefore, we reverse the court's order and remand for further proceedings consistent with this decision.

*By the Court.*—Order reversed and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.