**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 8, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP1350**

**STATE OF WISCONSIN**

Cir. Ct. No. 2023TP8

**IN COURT OF APPEALS
DISTRICT I**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO D.O. II, A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

    V.

S.O.,

      RESPONDENT-APPELLANT.

       APPEAL from an order of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed*.

¶1    GEENEN, J.[1] Sarah appeals from the circuit court's order terminating her parental rights to Daniel.[2] Sarah argues that the circuit court erroneously exercised its discretion when it determined that the termination of her parental rights was in Daniel's best interests when it failed to explicitly consider Daniel's wishes.[3] For the following reasons, this court affirms the circuit court's order.

## BACKGROUND

¶2    Daniel was born prematurely to Sarah in March 2019. He was removed from his parents' care while in the hospital and, when released from the hospital, placed in his paternal grandparents' home due to concerns of neglect and residential stability. Daniel was subsequently determined to be a child need of protection or services (CHIPS) under WIS. STAT. ch. 48.

¶3    In 2023, the State filed a petition to terminate the parental rights (TPR) of Daniel's mother, Sarah. The petition alleged as grounds for termination that Daniel remained in "continuing need of protection or services," that Sarah abandoned Daniel, and that Sarah failed to assume parental responsibility.[4] *See* WIS. STAT. § 48.415(1)(a)2., (2), (6).

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading, we refer to the family in this confidential matter using pseudonyms. *See* WIS. STAT. RULE 809.19(1)(g).

[3] We note that Sarah failed to file either a reply brief or a statement indicating that she would not file a reply brief as required by WIS. STAT. § 809.107(6)(c). We remind counsel that we expect compliance with the rules of appellate procedure.

[4] Daniel's father died in 2022 before TPR proceedings were initiated.

¶4      Sarah entered a no contest plea to the continuing CHIPS allegation. After the State presented to the circuit court adequate proof that Daniel remained in continuing need of protection or services, the court dismissed the other grounds, and found Sarah unfit based on the continuing CHIPS ground.   The case proceeded to the second phase of the TPR proceedings and the circuit court conducted a dispositional hearing in April 2024.[5]

¶5      At the dispositional hearing, the circuit court heard testimony from Daniel's case manager and Sarah.  That testimony established that Daniel, who was five years old at the time of the hearing, had remained in out-of-home care at his paternal grandparents' home since birth, that he had three half-siblings who also lived at his paternal grandparents' home since at least May 2020, and that his grandparents were meeting his medical needs and would adopt him if Sarah's parental rights were terminated.  Evidence further provided insight on Sarah's relationship with Daniel, including their visits, which were supervised due to the CHIPS proceedings, and inconsistent due to Sarah's multiple cancellations. Additionally, Sarah had not made progress toward meeting the conditions that would allow her to have unsupervised visits with Daniel, such as controlling her mental health and providing safe care for Daniel.  The court also heard testimony about Daniel's relationship with his grandparents and other paternal relatives. Daniel's case manager opined that Daniel was too young to fully understand what

---

[5] Termination of parental rights cases consist of two phases: a grounds phase to determine whether there are grounds to terminate a parent's rights, and a dispositional phase, which determines whether termination is in the child's best interest. *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶¶24-28, 255 Wis. 2d 170, 648 N.W.2d 402.  If grounds are found by the jury, the parent is found "unfit," WIS. STAT. § 48.424(4), then the case moves to the dispositional phase, at which the child's best interests are paramount. *Steven V. v. Kelley H.*, 2004 WI 47, ¶26, 271 Wis. 2d 1, 678 N.W.2d 856.

adoption meant, but that he expressed that he wanted to stay with his grandparents; Sarah did not contest this assertion and offered no testimony or other evidence that Daniel wished otherwise.

¶6    The circuit court began its oral ruling by telling the parties that it was "going to go through the factors that [it is] required to go through by statute[.]"  The court then explained:

> [T]he first factor is the likelihood of adoption if the TPR petition is granted, my answer to that question is yes.  The grandparents are committed to adopting [Daniel].  He is placed there in that home with his half-siblings the three girls have been placed there with his grandparents … a significant amount of time.
>
> The next factor [is] whether the age or health of the child is a barrier to adoption … there is no barrier to adoption even though he had some medical issues ….  The grandparents have been maintaining the child's medical care for the past two years and they continue to do so under the present order so that's not an issue and not a barrier to him being adopted.  The time that the child has been removed from the child's home, as I've stated before the child was placed with the grandparents … [and] has been in out of home care since just after birth … a significant amount of time.  He has never lived with his mother[.]

¶7    After noting that Daniel's father was deceased, the court continued:

> I find that his relationship with [Sarah] is not substantial due to the inconsistent visits [Sarah had] with him and CPS[6] had to make several referrals for visitation agencies and [she was] dropped from at least three of them because [she] missed or canceled visits and not visiting with him didn't allow [her] to build that bond that I could classify as being a substantial relationship with [Daniel].

---

[6] "CPS" is the shortened version of DMCPS, which stands for the Division of Milwaukee Child Protective Services.

¶8      The court then noted that Daniel had a strong relationship with his paternal family members and that those familial relationships would be maintained even if Sarah's parental rights were terminated. In light of the lack of a substantial relationship with Sarah and the fact that the paternal family relationships would continue, the court noted that Daniel would not suffer from the severing of his and Sarah's legal relationship, and found "it would not be harmful."

¶9      The court again noted that the duration of separation was since birth, and continued:

> [T]he last factor is whether or not the child will be able to enter into a more stable and permanent family relationship as a result of termination taking into account the current conditions of placement, the likelihood of future placements and the result of prior placements. My answer to that question is yes.… [I]f the TPR is not granted, I find that [Daniel] will probably just stay in foster care because [Sarah has] not demonstrated the behavioral change that [she] needed to meet for him to be safely placed with [her] and … the uncertainty and conflicts and confusion, I think it's time for [Daniel] to just not have to deal with that.

¶10     The circuit court determined that terminating Sarah's parental rights was in Daniel's best interest and granted the petition, concluding:

> [B]ased on the fact [Daniel] has been out of the home for practically all of his life living with his grandparents, he is adoptable, and all of the other factors I have considered I am finding and I conclude as a matter of law considering the evidence in light of the best interest of the child standard … that termination of parental rights have been proven by clear, satisfactory and convincing evidence that it is in the best interest of [Daniel] that [Sarah's] parental rights are terminated.

¶11     Sarah appeals.

## DISCUSSION

¶12 When determining the disposition of a TPR petition, the prevailing factor is the best interests of the child. WIS. STAT. § 48.426(2). To determine the best interests of the child, the circuit court must consider, but is not limited to, the following six factors:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

Sec. 48.426(3). The circuit court is not required to afford greater weight to any particular factor, although the "record should reflect adequate consideration of and weight to each factor." *State v. Margaret H.*, 2000 WI 42, ¶¶29, 35, 234 Wis. 2d 606, 610 N.W.2d 475.

¶13 On appeal, the parties and guardian *ad litem* (GAL) agree that the circuit court properly addressed the factors required by WIS. STAT. § 48.426(3)(a), (b), (c), (e), and (f), in determining that terminating Sarah's parental rights was in Daniel's best interests. Sarah argues, however, that the circuit court committed reversible error when it did not explicitly discuss Daniel's wishes in its oral ruling

on the disposition in Daniel's case as required by § 48.426(3)(d). The State and GAL argue that despite the absence of an explicit reference to Daniel's wishes in the court's oral ruling, the case manager's testimony about Daniel's wishes and his visits with his mother establish his wishes, and that the circuit court's ruling implicitly reflects that it gave adequate consideration to Daniel's wishes. We agree with the State and GAL.

¶14 This court will uphold the circuit court's decision to terminate parental rights if there is a proper exercise of discretion. *Margaret H.*, 234 Wis. 2d 606, ¶32. A proper exercise of discretion requires the circuit court to examine the relevant facts, apply a proper standard of law, and use a demonstrated rational process to reach a conclusion that a reasonable judge could reach. *Dane Cnty. DHS v. Mable K.*, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

¶15 The State and GAL appear to concede that the circuit court did not make explicit findings regarding Daniel's wishes, and we agree. The circuit court only indicated that it considered Daniel's wishes by stating that it would go through the required statutory factors to determine whether it is in Daniel's best interests to terminate Sarah's parental rights, and explained that its decision is based on "all of the other factors I have considered[.]" The question for this court, then, is whether the record reflects that the circuit court adequately considered Daniel's wishes. *See Margaret H.*, 234 Wis. 2d 606, ¶35. We will not review the record to determine Daniel's wishes, but rather to discern whether the circuit court

properly considered this factor in exercising its discretion to terminate Sarah's parental rights.[7]

¶16     In assessing whether the record reflects adequate consideration of Daniel's wishes, "[w]e will search the record for reasons to sustain the [circuit] court's exercise of discretion." ***Lofthus v. Lofthus***, 2004 WI App 65, ¶21, 270 Wis. 2d 515, 678 N.W.2d 393.   This court is not required to find any "magic words" in order to conclude that the circuit court's legal analysis complied with the statutory mandates and that the court appropriately exercised its discretion. *See* ***State v. B.W.***, 2024 WI 28, ¶78, 412 Wis. 2d 364, 8 N.W.3d 22.   We are looking for evidence that "contemplates a process of reasoning" which "must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards." ***McCleary v. State***, 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971).

¶17     Sarah relies on ***State v. Bolstad***, 2021 WI App 81, 399 Wis. 2d 815, 967 N.W.2d 164 and ***State v. Gallion***, 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197—both of which discuss what constitutes a proper exercise of discretion when the circuit court considers the sentencing factors required under WIS. STAT. § 973.017(2)—to support her sole argument that the circuit court must similarly explicitly identify each factor under WIS. STAT. § 48.426(3) in TPR cases. However, these cases do not stand for Sarah's proposition that each statutory factor must be explicitly identified in the circuit court's decision in order for the

---

[7] The State and GAL contend that the record establishes that Daniel was either too young to have an opinion or fully understand adoption, and wanted to remain with his grandparents. However, this court is "not a fact-finding court," thus, we will not determine what Daniel's wishes are. *See* ***Rand v. Rand***, 2010 WI App 98, ¶23, 327 Wis. 2d 778, 787 N.W.2d 445 ("We are not a fact-finding court.").

circuit court to properly exercise its discretion. Instead, as **Bolstad** highlights, "Proper … discretion can exist without [explicitly identifying the] … factors; what is required is a consideration of the … factors." **Bolstad**, 399 Wis. 2d 815, ¶¶16 & 23 n.7 (citation omitted; brackets in **Bolstad**).

¶18 Here, we must determine whether the circuit court's consideration of Daniel's wishes is discernable from the record. At the dispositional hearing, the circuit court stated twice that its decision to terminate Sarah's parental rights was based on its consideration of the required statutory factors. Furthermore, Daniel's case manager opined that Daniel was too young to express his wishes and testified that Daniel had expressed a desire to stay with his grandparents and his half-siblings. Importantly, Sarah did not contest that Daniel wanted to remain with his grandparents at the dispositional hearing or before this court. Thus, evidence of Daniel's wishes was presented to the circuit court and the court's remarks demonstrated that it considered Daniel's wishes, despite the court's failure to explicitly identify this factor. Therefore, we conclude that the circuit court properly exercised its discretion by considering Daniel's wishes.

## CONCLUSION

¶19 After reviewing the record, we conclude that the circuit court did not erroneously exercise its discretion when it determined that terminating Sarah's parental rights was in Daniel's best interests. The circuit court considered Daniel's wishes as required by WIS. STAT. § 48.426(3)(d), despite failing to explicitly identify this factor in its decision. The circuit court examined the relevant facts, applied the proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *See* **Mable K.**, 346 Wis. 2d 396, ¶39. Accordingly, we affirm.

9

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.